**Mrs. Viola P. BREWERTON, Plaintiff,**

v.

**Mr. Robert H. FINCH, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**No. GC70-37-S.**

United States District Court,
N. D. Mississippi,
Greenville Division.

Nov. 10, 1970.

---

H. Talbot Odom and Luke J. Schissel, of Odom, Odom & Upshaw, Greenwood, Miss., for plaintiff.

H. M. Ray, U. S. Atty., and Falton O. Mason, Jr., Asst. U. S. Atty., Oxford, Miss., for defendant.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

Plaintiff commenced this action seeking compensation for inpatient hospital services pursuant to 42 U.S.C.A. § 405 (g) and 42 U.S.C.A. § 1395ff(b).

Plaintiff seeks a review of a decision of the Appeals Council of the Department of Health, Education, and Welfare, made March 9, 1970, modifying and reversing in part a determination of the hearing examiner on November 13, 1969, pursuant to a hearing held on July 17, 1969.

The hearing examiner determined that "emergency services" were provided plaintiff by Greenwood-Leflore Hospital from December 31, 1967, to March 25, 1968, and concluded that the claimant and/or Greenwood-Leflore Hospital of Greenwood, Mississippi, was entitled to payment under Medicare for the hospitalization of plaintiff for such period under the provisions of Section 1814(d) of the Social Security Act, as amended.

The Appeals Council affirmed in part and reversed in part the decision of the hearing examiner, holding that only the services furnished plaintiff during the first thirty days of her hospitalization were "emergency services" within the meaning of the Social Security Act.

On Page Three of the decision of the Appeals Council dated March 9, 1970, and being Page Seven of the transcript filed herein on June 19, 1970, the basis of the decision was stated as follows:

"However, following such 30 day period, the claimant's respiratory condition, for which she had been admitted on an emergency basis, was stabilized and it would have been safe from a medical standpoint to have moved her to a participating hospital or extended care facility. The medical emergency, therefore, terminated at the end of the first 30 days."

On April 28, 1970, plaintiff instituted this action seeking a review and reversal of the decision of the Appeals Council. On July 28, 1970, the United States Attorney, as attorney for the defendant Secretary, filed a Motion For Summary Judgment and on August 19, 1970, plaintiff also filed a Motion For Summary Judgment. Opposing counsel have submitted briefs on the issue herein and the case is now before the court for determination as to whether the decision of the Secretary is supported by substantial evidence.[1]

From an examination of the record it appears that a decision as to the validity of plaintiff's claim was based upon the testimony of her daughter-in-law, Elizabeth Brewerton, before the hearing examiner; a hospital form entitled "Inpatient Hospital Admission and Billing," dated April 16, 1968, listed as Exhibit Number 2 in the transcript filed herein by the Acting Chairman for the Appeals Council; a letter from plaintiff's physician, Dr. H. Reed Carroll, to Mr. Douglas M. Richard, dated November 22, 1968, and specified as Exhibit Number 8; a history of physical examination prepared by Dr. H. Reed Carroll, dated December 31, 1967, together with a discharge summary attached and specified as Exhibit Number 20; a copy of hospital records

1. Alsobrooks v. Gardner, 5 Cir.1966, 357 F.2d 110.

from the hospital concerning hospitalization from December 31, 1967, through March 25, 1968; and a letter from Dr. H. Reed Carroll which was not presented to the hearing examiner but was presented to the Appeals Council and specified as Exhibit AC–1.

The court is of the opinion that the record contains substantial evidence in which to support the decision of the Secretary that an "emergency" existed during the period from December 31, 1967, through January 31, 1968. However, this court can find no substantial evidence which supports the Secretary's decision that the emergency terminated on January 31, 1968.

Exhibit Number 2, "Inpatient Hospital Admission and Billing" specifies in blank Number 14: "Admitting Diagnosis: Respiratory distress—influenza with acute bronchitis. R/O Pneumonia." In blank Number 15 listed as the discharge or current diagnosis there appears:

"Acute respiratory distress: Influenza with acute bronchitis. Early peribronchial pneumonitis. ASCVD with myocardial ischemia, and cardiomegaly. Pulmonary fibrosis. Leg and shoulder pain due to traumatic osteoarthritis and sciatica."

In Exhibit Number 8 Dr. Carroll enunciated his medical evaluation of the plaintiff in a letter to Mr. Douglas M. Richard where he wrote:

"If you will refer to the original discharge summary which accompanied this patient's claim you will find that our problem dealt with a severe cardiac disease and respiratory problem. During her entire hospital stay these conditions remained prevalent and were of primary concern. Personally I would not have assumed the responsibility of a transfere (sic) of this patientx (sic) at any time during the course of this illness. I feel that her discharge on March 25, 1968, was the earliest that she could have possiblity (sic) been moved. * * * "

The discharge summary, which is specified in Exhibit Number 20, prepared by Dr. Carroll, reads as follows:

"White female, age 80, admitted as an emergency, 11:00 AM, 12/31/67. Patient was admitted because of acute respiratory distress which had started during night before admission. She complained of generalized aching, had a severe nonproductive cough, was in acute respiratory distress, complained of precordial chest pain with referred pain into left side of her neck. Both lungs were filled with scattered rhonchi and wheezes. We were concerned over the possibility of an acute parabronchial pneumonia and also of myocardial insufficiency with possible imminent coronary thrombosis. During her hospital stay she did not respond well to treatment, continued in respiratory distress, had frequent episodes of precordial chest pain with referred pain into left side of her neck and left shoulder. In addition to this she had increasing pain at the site of the old fractures of the left hip particularly. She was bedridden. We had difficulty in getting her up on a wheelchair due to her acute pain and distress. She developed an acute cystitis and pyelitis which added to her problems. She continued on treatment and gradually her symptoms subsided to the point where we were able to discharge her on 3/25/68, for nursing care at her home."

The Appeals Council placed great weight on the progress notes in the hospital records which were received as evidence before the hearing examiner and referred to herein as Exhibit Number 20. The progress record in its entirety is as follows:

(1) 12–31–67, Acute respiratory distress.

(2) 1–1–68, Much cough and chest congestion and pain.

(3) 1–4–68, ———— & facial impaction.

(4) 1–7–68, Very weak and listless, not eating well.

(5) 1–10–68, Chest is a little better.

(6) 1–15–68, Much pain in right shoulder and left hip.

(7) 1–19–68, Stomach cramps and soreness of mouth.

(8) 1–26–68, Repeated trouble with constipation and severe pain in right shoulder.

(9) 1–31–68, Severe left hip pain and leg pain and cramps.

(10) 2–5–68, Bedridden in much pain —omit PT.

(11) 2–10–68, Legs swollen this AM.

(12) 2–12–68, Profound weakness.

(13) 2–13–68, Patient has been sick ever since she ate sausage 3 days ago—nausea and vomiting and epigastric discomfort and excessive gas.

(14) 2–15–68, Try talwin for pain.

(15) 2–20–68, Condition fair—continue Rx.

(16) 2–28–68, Recent episodes of nausea—ok now.

(17) 3–2–68, Still has severe pain in right shoulder.

(18) 3–8–68, Check for pyouria.

(19) 3–15–68, Condition fair.

(20) 3–20–68, Good result with use talwin.

(21) 3–25–68, Discharged on Rx.

This court does not consider these notes as substantial evidence that an emergency did not exist in light of the physician's opinion expressed later in two letters, Exhibits Number 8 and AC–1. It does not comport with good reason to conclude that the attending physician's own notes on the hospital's progress report should be used to nullify the interpretation which he assigns to them.

This court fails to see the distinction between plaintiff's condition on January 7, 1968, and plaintiff's condition on February 5, 1968, or for that matter on March 25, 1968.

■ This court is well aware that the patient's attending physician's opinion is not a binding conclusion which the Secretary must accept, but in instances such as the facts shown to exist in the case sub judice where there is no conflicting evidence, this court is of the opinion that his decision is to be given great weight in the determination of the patient's condition.

Exhibit Number 13 is a letter to plaintiff from Douglas M. Richard, Regional Representative for the Social Security Administration, in which he informed her that:

" * * * Upon reconsideration, based on medical evidence in file, our consulting physician again found that these services did not meet the above emergency definition."

The letter went on to say:

" * * * Complete documentation would be necessary concluding that you could not have been transferred to a participating hospital or available extended care facility during the entire eighty-five day period * * * "

Section 405.191 [Departmental Regulations No. 5, Code of Federal Regulations, Title 20, Chapter III, Part 405] reads in part:

"(2) an emergency no longer exists when it becomes safe from a medical standpoint to move the individual to a participating or other institution or to discharge him."

Congress has indicated that in transferring a patient from a hospital to an extended care facility the transfer must be made on the advice of the patient's attending physician. This is supported in 42 U.S.C.A. § 1395x(l) where it states:

"(e) A hospital and an extended care facility shall be considered to have a transfer agreement in effect if, by reason of a written agreement between them * * * there is reasonable assurance that—

(1) transfer of patients will be effected between the hospital and the extended care facility whenever such transfer is medically appropriate as determined by the attending physician; and * * *."

**72**

There is no other meaningful requirement which should apply except to allow the physician, in whose hands lies the responsibility of life and death at the very moment of transfer, the discretion as to whether his patient should be transferred from one place to another, be it an extended care facility or a participating hospital.

Section 405.152(b) [Departmental Regulations No. 5, Code of Federal Regulations, Title 20, Chapter III, Part 405] defines "emergency services" as those inpatient hospital services which are necessary to prevent the death or serious impairment of the health of the individual and which, because of the threat to life or health of the individual, necessitate the use of the most accessible hospital available and equipped to furnish such services.

The court is of the opinion that the decision of the Secretary in the case sub judice is not supported by substantial evidence; that the decision of the hearing examiner should be reinstated; and that plaintiff and/or Greenwood-Leflore Hospital is entitled to payment under Medicare for the hospitalization of plaintiff for the period commencing December 31, 1967, and ending March 25, 1968, pursuant to Section 1814(d) of the Social Security Act.

An appropriate order will be entered.