**Charlie D. SOWELL, Administrator of the Estate of Myrtie W. Sowell, Deceased, Plaintiff,**

**v.**

**Elliott RICHARDSON, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 70–583.**

United States District Court,
D. South Carolina,
Florence Division.

Nov. 17, 1970.

James M. Herring, of Saleeby, Saleeby, & Herring, Hartsville, S. C., for plaintiff.

Joseph O. Rogers, Jr., U. S. Atty., and Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

This action was instituted by Charlie D. Sowell as the Administrator of the estate of his deceased wife, Myrtie W. Sowell, for hospital insurance benefits provided in Section 1812 of the Social Security Act (hereinafter referred to as "the Act") (42 U.S.C. § 1395d).

Section 1869(b) of the Act (42 U.S.C. § 1395ff(b)) provides for judicial review of the final decision of the Secretary of the Department of Health, Education, and Welfare (hereinafter referred to as "the Secretary") when the amount of hospital insurance benefits in controversy is $1000 or more. The final decision of the Secretary in this case consists of a decision rendered by a Hearing Examiner in the Bureau of Hearings and Appeals in the Social Security Administration, Department of Health, Education, and Welfare on March 6, 1970, as affirmed by the Appeals Council of this Administration on May 8, 1970. This decision held that the plaintiff's deceased wife, Myrtie Sowell, was not entitled to have hospital insurance benefits paid on her behalf to the Hartsville Convalescent and Nursing Home for services provided Mrs. Sowell during her stay at the Home from September 24, 1969; that the services were not "extended care services" as defined by Section 1861(h) of the Act (42 U.S.C. § 1395x(h)) but instead constituted "custodial care" and therefore were excluded from coverage under Section 1862(a) (9) of the Act (42 U.S.C. § 1395y(a) (9)).

The nature of the judicial review authorized by Section 1869(b) of the Act is governed by the provisions of Section 205(g) of the Act (42 U.S.C. § 405(g)). Section 205(g) of the Act, in turn, provides, *inter alia*, that "As part of his answer the Secretary shall file a certified copy of the transcript of the record, including the evidence upon which the findings and decision complained of are based," and that "the court shall have power to enter upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." It also provides that "the findings of the Secretary as to any fact, if supported by" substantial evidence, shall be conclusive: Subsection 205(h) of the Act, 42 U.S.C. § 405(h), (made applicable to actions under Title XVIII of the Social Security Act by Section 1872 thereof,

42 U.S.C. § 1395ii), expressly restricts the judicial remedy to the aforesaid manner of judicial review.

The beneficiary, Mrs. Sowell, was entitled to hospital insurance benefits as provided for in Section 1812 of the Act (42 U.S.C. § 1395d). On September 18, 1969, at age 72, she was admitted to the Byerly Hospital, Hartsville, South Carolina, following an acute attack of shortness of breath. The medical evidence as summarized in the patient's discharge summary from Byerly Hospital on September 24, 1969 indicates that Mrs. Sowell had a left radical mastectomy performed in May 1968. Clinical evidence in June 1969 demonstrated metastatic spread of the cancer and all concerned knew of the terminal nature of the illness. Diabetes mellitus was diagnosed also in June 1969. In addition to the attack of shortness of breath, the patient had complained of swelling in the right lower extremity. Chest x-ray revealed the presence of early pulmonary emphysema. Her course in the hospital was uneventful and she was discharged on September 24, 1969. The discharge diagnosis was:

1. Carcinoma of the left breast, 1½ years postoperative with wide spread skeletal mestasteses;

2. Diabetes mellitus, mild to moderate in severity;

3. Cataract senile, O. S.;

4. Pulmonary emphysema

Upon discharge from Byerly Hospital, the patient was transferred to the Hartsville Nursing and Convalescent Home. The transfer form signed by Dr. K. W. Kreuger indicated that the patient's activity tolerance limitations were moderate to severe, full weight bearing was possible, and the patient was permitted to sit in a chair for one hour three times daily.

This court in considering this matter realizes that it is of concern not only to the plaintiff herein but also to the defendant. If care of the type indisputably provided the deceased herein is in fact, and was intended to be covered by the Act, the defendant can expect very substantial expenditure regarding similar claims. It is not disputed that the institution in which the deceased was maintained is in all respects qualified as an extended care center or that she was admitted after a period of hospitalization on the proper certificate of her physician.

The exclusion upon which the Secretary relies bars payment of expenses for "custodial care." (42 U.S.C. § 1395y) This court finds no authority defining "custodial care" as used in the statute. The position of the Secretary is that benefits can be paid for treatment in an extended care facility only if the treatment provided is such that it must be given under the supervision of a registered professional nurse. Further explanation of extended care is found in the Government's brief where it is urged that they include health services which can *only* be provided in an institutional setting by trained and skilled professional personnel. Likewise, the services must be an extension of the medical treatment the beneficiary received in a hospital. The Secretary urges that care which fails to meet this standard is "custodial" and therefore compensation for it is not authorized.

■ This court does not find justification in the Act for such restrictive definition of the extended care provisions. The legislation which created health insurance for the aged is remedial and therefore to be construed liberally to effectuate the congressional purpose. See Walston v. Gardner, 381 F.2d 580 (6th Cir.1967). The purpose of the Act was to insure that adequate medical care was available to the aged throughout this country. (See 1965 U.S.Code Cong. & Admn. News, p. 1964). Neither the courts nor the Secretary should, in the interest minimizing costs so interpret the provisions of the Act as to frustrate its purpose. A sensible nontechnical approach to interpretation of this chapter is necessary in order to give effect to the purposes of the Act and to afford equitable treatment to those seeking its

benefits. (See Pasquale v. Cohen, 296 F.Supp. 1088, (D. R.I.1969) ).

■ The position taken by the Secretary is not in accord with these principles. Under his formula for determining whether the services are covered only the service actually rendered is considered. The condition of the insured and manifest symptoms of the illness are in his view only relevant to the extent that they determine the treatment administered. Were the law as contended by the Secretary, consideration of the trees is commanded but even a glimpse of the forest prohibited. It was never intended by Congress that the condition of the insured, treatment that might at any time be necessary, and the pain and discomfort attending inadequate or unprofessional care or lack of care not be considered together with treatment actually provided in determining whether extended care services are justified. Every aspect of the plaintiff's physical condition must be considered in making the determination. Treatments immediately required are of course a major factor. However, even if no treatment were required the condition of the insured might be so unstable or unsatisfactory, as to require the extended services contemplated by the statute. Regardless of the proper standard for evaluation services for the purpose of determining their coverage under the Act, the record in this instance convinces the court that all the evidence indicates that the care given the insured was contemplated and compensated through the Act.

It appears that the immediate problem requiring the period of hospitalization of the insured was an acute attack of shortness of breath. The defendant reasons that, because that symptom did not require treatment either in the hospital or the extended care facility, the admission of the insured to the latter was not for the same malady as to the former. It is argued that the necessary sequential element of treatment is lacking. The argument is without merit. The lady was dying of cancer, complicated by diabetes and emphysema at the time of her admission to the hospital. The only reasonable inference is that the attack of dyspnea, which was the immediate cause of the admittance to the hospital, was a result of the general physical condition of the insured. When admitted to the extended care facility the pitiable condition of the insured had not improved but was the same that had required her initial hospitalization.

The only remaining question is whether the record contains substantial evidence for the Secretary's finding that the care Mrs. Sowell received was not that of the skilled type contemplated by Congress. The lady's physician by letter indicated the dire nature of her problems,[1] and stated that she was pre-

---

1. The letter of Dr. Krueger was as follows:

October 3, 1969

Dear Mrs. Grooms:

This is written in response to the denial of extended care for the above patient of mine.

Mrs. Sowell has terminal carcinoma which has recently (about four months ago) been complicated by diabetes mellitus. Widespread skeletal metastasis due to breast carcinoma is present. Nodules can be felt on the skull surface and there is widespread lymphatic metastasis manifested by moderate lymphedema of the right lower extremity. Stilbesterol, fortunately, has moderated, to an extent, these dreadful complications of the skeleton and accompanying pain.

Mrs. Sowell was in the hospital under the Medicare program and was prematurely discharged to an extended care institution. Denial of benefits under the program makes this decision regrettable.

Denial of benefits to this patient would indicate the exclusion of those sorely in need of constant care. This patient is unable to walk or care for herself in any way.

Whereas I regret that I have found questionable some of your decisions regarding the need for hospitalization or extended care, in this particular case, I must strongly voice my objection to your decision that there is not a need for extended care. I must ask for a reversal of this decision.

Sincerely,

/s/ K. W. Krueger

K. W. Krueger, M.D.

KWK:jd

maturely discharged from the hospital to the extended care institution. It appears that she could do nothing for herself and required assistance to perform any function. The treatment ordered included a diabetic 1800 calorie diet, substantial doses of medications of various sorts and daily urine analysis. While it may be true that this could have been accomplished in a less sophisticated setting, it must not be overlooked that the lady's condition was extremely unsatisfactory and deteriorating. That she required observation was evidenced by the recent attack requiring her hospitalization. By February 1970 she had to be catherized and on March 2, 1970 she died. There is no evidence in the record that her admission to the extended care facility in late September 1969 was not required by her need for skilled medical attention. All the evidence indicates that she was in terrible physical condition and that she in fact required the care offered by the institution.

Therefore the decision of the Secretary must be reversed and judgment entered for the plaintiff.

And it is so ordered.