Percy L. **BREEDEN** et al.

v.

Caspar **WEINBERGER**, Secretary of Health, Education, and Welfare.

Civ. A. No. 73–129.

United States District Court, M. D. Louisiana.

June 28, 1974.

William R. Weatherford, Baton Rouge, La., for plaintiffs.

Douglas M. Gonzales, U. S. Atty., Robert S. Leake, Asst. U. S. Atty., M. D. La., Baton Rouge, La., for defendant.

E. GORDON WEST, District Judge:

This suit is brought pursuant to 42 U.S.C. §§ 405(g) and 1395ff for review of a final decision of the Secretary of Health, Education, and Welfare, denying Medicare benefits to the plaintiffs' decedent, Mrs. Demarius Breeden, for services rendered to Mrs. Breeden as an inpatient at the Baton Rouge General Hospital from February 20, 1971, until her discharge on May 21, 1971.

Mrs. Demarius Breeden was enrolled in Part A of the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. § 1395, et seq. From January 30, 1971, through May 21, 1971, she was a patient in Baton Rouge General Hospital. A claim for benefits was submitted and on September 28, 1971, the claimant was advised that no benefits were payable for the period of February 20, 1971, through May 21, 1971. On December 23, 1971, claimant's heirs were notified that the claim had been reconsidered and again denied.

A hearing was conducted before an Administrative Law Judge on June 16, 1972, to consider the plaintiffs' claim.

On October 31, 1972, the Administrative Law Judge issued an order denying the plaintiffs' claim for Medicare payments for hospital services rendered between February 20, 1971, and May 21, 1971. The Appeals Council of the Bureau of Hearings and Appeals reviewed the matter and adopted the decision of the Administrative Law Judge on February 12, 1973.

Mrs. Breeden, then age 82, was admitted to the Baton Rouge General Hospital, upon orders of her attending physician, Dr. I. Ashton Robins, on January 30, 1971, having suffered two distinct strokes, with resulting bilateral hemiplegia, complete on the left side, and partial on the right. Her condition was further characterized by her physician as mentally confused, aphasic, and incontinent. It was also indicated that she had a long history of hypertension, arteriosclerotic heart disease, and angina, and that she had suffered "little strokes" for years.

Upon her admission, Dr. Robins ordered routine laboratory tests, an edentulous (toothless) diet, a continuation of medication she had been receiving at a nursing home, catheterization, and an enema.

A study of the hospital records in evidence shows that Mrs. Breeden received routine medical care and supervision at the hospital during her stay of 111 days, until her discharge on May 21, 1971, at which time her physician noted in his discharge summary:

"While in hospital all therapy unavailing. Her condition has slowly but steadily deteriorated and cannot believe she will last long.

"She is sent home as is getting and can get no further benefit from hospitalization."

Also included in the hospital records are progress reports, with entries by the attending physician, apparently after each visit with Mrs. Breeden. These entries, some 47 in all, reflect a gradual deterioration in Mrs. Breeden's condition which led to Dr. Robins' conclusion, expressed in his discharge summary, that further hospitalization would be unavailing.

The decision of the Administrative Law Judge that no Medicare benefits were payable for the period of February 20, 1971 to May 21, 1971, was based on his interpretation of Section 1862(a)(1) of the Social Security Act, 42 U.S.C. § 1395y(a)(1) which provides:

"(a) Notwithstanding any other provision of this subchapter, no payment may be made under part A or part B for any expenses incurred for items or services—

"(1) which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member;"

The factual evidence which the Administrative Law Judge cited in support of his decision was that (1) the medical reports show routine care and conventional oral medication, (2) the nurse's record showed close observation, notation and evaluation of her condition until February 19, 1971, but after that time notations were infrequent and sporadic, and show only catheter care, difficulty with eating, and positioning the patient, and (3) a report, dated July 24, 1972, by Dr. Oren B. Gum, who was requested by the Administrative Law Judge to review the record.

The Law Judge did not quote from Dr. Gum's report, nor did he expressly rely on it. However, since it is the only medical opinion in the record other than that of the treating physician, and since it expresses a slightly different opinion, although not directly in conflict, it would seem that the Law Judge must have relied on it, at least to some extent, in reaching his decision.

Dr. Gum, who never saw nor treated Mrs. Breeden, states in his report that after a review of the record, it is his opinion that Mrs. Breeden required continuous medical attention over the entire period of hospitalization from January 30, 1971 through May 21, 1971. He ex-

pressed his belief that although it would have been extremely difficult for this degree of medical attention and nursing care to be carried out in her home environment, he felt she could have received the necessary medical attention and nursing care required, if an appropriate nursing home were available, after three or four weeks of hospitalization. Dr. Gum carefully pointed out that as opposed to home care, hospitalization was necessary.

The only other medical opinion in the record is contained in two letters written by Dr. Robins, the treating physician, in which he clearly states that in his opinion, Mrs. Breeden required total care with constant attention, and that hospitalization was required for the entire 111 day period for the proper care of the patient.

Dr. Robins' medical opinion was not cited by the Law Judge nor in any way alluded to. Rather, the Law Judge decided, on the basis of hospital charts and records, and apparently Dr. Gum's report, that the services rendered to Mrs. Breeden after February 19, 1971, were no longer reasonable and necessary for the treatment of her illness, and therefore excluded under Section 1395y(a)(1).

Unfortunately, the phrase "not reasonable and necessary for the diagnosis or treatment of illness or injury" is nowhere defined in the Act or in the Regulations, nor has a study of the legislative history of the Act revealed its intended meaning or the criteria to be used in its application. Further, no case has been cited, and our own research has discovered no reported decision reviewing a rejection of Medicare payments for hospital services under this provision.

There are, however, several reported decisions dealing with the denial of Medicare benefits for services rendered in "extended care facilities," i. e., nursing homes, on the basis that such services amounted to "custodial care" and were thus excluded from coverage under 42 U.S.C. § 1395y(a)(9).

From these cases emerge three principles which, by analogy to the present case, this Court finds persuasive.

The first is that in determining whether the services rendered to the patient are covered under the Act, it is not only the services actually rendered which are to be considered, but rather every aspect of the patient's physical condition. Sowell v. Richardson, 319 F. Supp. 689 (D.C.S.C.1970); Pippin v. Richardson, 349 F.Supp. 1365 (M.D.Fla. 1972).

"It was never intended by Congress that the condition of the insured, treatment that might at any time be necessary, and the pain and discomfort attending inadequate or unprofessional care or lack of care not be considered together with treatment actually provided in determining whether extended care services are justified." Sowell v. Richardson, supra, 319 F.Supp. at 692.

The second principle is that while an attending physician's opinion is not a binding conclusion which the Secretary must accept, where there is no direct conflicting evidence, his decision is to be given great weight. Pippin v. Richardson, supra; Harris v. Richardson, 357 F.Supp. 242 (E.D.Va.1973); Brewerton v. Finch, 320 F.Supp. 68 (N.D. Miss.1970).

A third and closely related principle is that under the Medicare provisions of the Social Security Act, Congress intended that the responsibility for determining what services the patient requires rests primarily with the treating physician. Reading v. Richardson, 339 F.Supp. 295 (E.D.Mo.1972).

Direct support for this conclusion is found in the Report of the Committee on Finance, 1965 U.S.Code Cong. & Admin. News p. 1986:

"(a) Conditions and limitations on payment for services

"(1) Physicians' role

"The committee's bill provides that the physician is to be the key figure in determining utilization of health services—and provides that it is a physician who is to decide upon admission to a hospital, order tests, drugs and treatments, and determine

the length of stay. For this reason the bill would require that payment could be made only if a physician certifies to the medical necessity of the services furnished. If services are furnished over a period of time to be specified in regulations, recertification by the physician would be necessary. * * *

"In the case of in-patient hospital services for which payment would be made, the bill would require that a physician certify that the services were required for an individual's medical treatment, or that in-patient diagnostic study was medically required and that the services were necessary for such purpose. * * *"

Also, in 20 CFR § 405.1035, entitled "Condition of participation—Utilization review plan," it is provided:

"Because there are significant divergences in opinion among individual physicians in respect to evaluation of medical necessity for inpatient hospital services, the judgment of the attending physician in an extended stay case is given great weight, and is not rejected except under unusual circumstances."

Applying these principles, and viewing the record as a whole, this Court concludes that the finding of the Secretary that the hospital services rendered to Mrs. Breeden from February 20, 1971 to May 21, 1971, were not reasonable and necessary for the diagnosis or treatment of her illness, is not supported by substantial evidence and therefore must be reversed.

The opinion of the attending physician was apparently ignored, even though it is entitled to great weight. The only other medical opinion, that of Dr. Gum, though only partially in conflict, was not directly relied on. The basis of the decision was the Law Judge's own interpretation of medical records and reports, ignoring the principle that the treating physician has the primary responsibility of determining what services are needed. There is no evidence whatever that any physician who treated or examined this patient at any time expressed the opinion that the services rendered were unnecessary or unreasonable for her treatment. Nor is there anything in the record, other than the Administrative Law Judge's interpretation of the medical reports, which indicates that the services rendered to Mrs. Breeden after February 20, 1971, were any less reasonable and necessary than those rendered during the first 21 days of her hospitalization.

Therefore the decision of the Secretary denying Medicare benefits to the plaintiffs for services rendered to Mrs. Breeden for the period February 20, 1971 to May 21, 1971, is reversed, and judgment will be entered herein for the plaintiffs as prayed for.