Dorothy KLOFTA, on behalf of the Estate of Estelle Klofta, her Deceased mother, Plaintiff,

v.

David MATHEWS, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 74-C-284.

United States District Court, E. D. Wisconsin.

Sept. 28, 1976.

David R. Clowers, Milwaukee, Wis., for plaintiff.

William J. Mulligan, U.S. Atty., by Leah M. Lampone, Asst. U.S. Atty., Milwaukee, Wis., for defendant.

## MEMORANDUM and ORDER

REYNOLDS, Chief Judge.

This is an action brought under Sec. 205(g) of the Social Security Act, 42 U.S.C. Sec. 405(g), and Sec. 1869(b) of the Act, 42 U.S.C. Sec. 1395ff(b). The plaintiff brings suit on behalf of the estate of her deceased mother, Estelle Klofta, seeking review of a final decision of the Secretary of Health, Education and Welfare (the "Secretary") denying payment of certain hospital benefits allegedly due the deceased under Part A of Title XVIII of the Social Security Act, 42 U.S.C. Sec. 1395c et seq., commonly referred to as the Medicare Act.

This matter is before the court on cross motions for summary judgment. I have decided to grant plaintiff's motion and deny defendant's motion, finding that the Secretary's decision denying benefits was not supported by substantial evidence.

From the pleadings and transcript of the record in this case, the following facts appear: Estelle Klofta was born on September 22, 1893 and died on March 3, 1972. On July 31, 1971, she was admitted to St. Mary's Hospital, Milwaukee, Wisconsin, for treatment of cancer of the endometrium (mucous membrane lining the uterus) and a fractured right hip. On October 15, 1971, she was transferred to an extended care facility, Milwaukee Protestant Home, Milwaukee, Wisconsin. On December 6, 1971, Estelle Klofta was transferred to the Columbia Hospital Milwaukee, Wisconsin, to receive treatment for pneumonia. She remained at Columbia Hospital until January 24, 1971, at which time she was transferred back to the Milwaukee Protestant Home, where she remained until the date of her death. (Tr. 18–19)

The present inquiry relates only to Estelle Klofta's stay in the Milwaukee Protestant Home during the period starting on October 15, 1971, and ending on December 5, 1971. On October 28, 1971, the Chairman of the Utilization Review Committee for the Milwaukee Protestant Home determined that Estelle Klofta's admission to the extended care facility was necessary, that her stay there could not have been shortened without adverse effect on her health, and that appropriate use had been made of ancillary services towards the end of shortening her stay in the extended care facility. At the same time, the Chairman determined that additional extended care services were not necessary and indicated that a further stay in the facility was not recommended. (Tr. 105)

On November 2, 1971, the Medicare intermediary, Associated Hospital Services Inc., disallowed Estelle Klofta's claim for hospital insurance benefits as of October 20, 1971. The notice of disallowance stated that the services Estelle Klofta was receiving were excluded from coverage under Medicare, but indicated that pursuant to an agreement between the Social Security Administration and the Milwaukee Protestant Home, payment would be made up to the point where it was decided that benefits would be disallowed. (Tr. 59)

Estelle Klofta's daughter requested a reconsideration of this determination, and on May 3, 1972, the Chief of the Reconsideration Branch of the Milwaukee District Office of the Social Security Administration again denied the claim for benefits. Payment was allowed for the period of October 15, 1971 to October 19, 1971 under the provisions of the assurance of payments program, but benefits for the period from October 20, 1971 through November 2, 1971, were disallowed for the reason that "Mrs. Klofta did not require continued skilled nursing care" during that time. Payment for services rendered after November 2,

1971 was denied on the grounds that "since such services were provided more than 14 days after the last day for which payment was allowed for extended care services," they were outside the coverage of the Medicare Act. (Tr. 66–67)

Estelle Klofta's daughter subsequently requested a hearing before a hearing examiner of the Bureau of Hearings & Appeals. On April 18, 1973, Administrative Law Judge Robert M. Burns considered the matter *de novo*, and on the basis of the daughter's testimony and the evidence on record, concluded that Estelle Klofta did not need and did not receive active therapeutic measures on a skilled professional level during the period at issue. The Administrative Law Judge accordingly reaffirmed the prior denial of Medicare coverage. (Tr. 15–21).

At the plaintiff's request, the Appeals Council of the Bureau of Hearings & Appeals reviewed the Administrative Law Judge's decision. On January 21, 1974, the Appeals Council concluded that the Administrative Law Judge's decision was correct, and informed the plaintiff that it would stand as the final decision of the Secretary of Health, Education & Welfare. (Tr. 11). The plaintiff subsequently initiated this action.

■ The nature of the judicial review which is authorized in actions of this type is limited:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Sec. 405(g).

A federal district court should accordingly not try the case *de novo*, nor should it modify or reverse the Secretary's decisions if the findings are supported by substantial evidence. "Substantial evidence has been defined to mean 'such relevant evidence that a reasonable man would accept as adequate to support a conclusion.'" *Schoultz*

*v. Weinberger*, 375 F.Supp. 929, 931 (E.D. Wis.1974).

■ At the same time, however, a reviewing court is not bound to accept the Secretary's conclusion of law. Before the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards. In this case, the court is called upon to review the Secretary's decision that the services received by Estelle Klofta at the Milwaukee Protestant Home during the period in question did not constitute services covered by the Medicare Act. In particular, the Secretary has determined that the services Mrs. Klofta received did not amount to "post-hospital extended care services," 42 U.S.C. Sec. 1395d(a)(2), and conversely, that these services did amount to "custodial care," 42 U.S.C. Sec. 1395y(a)(9), which the Act expressly excludes from coverage. In a case involving this same question, it was held that the Secretary's construction and application of statutory language was not binding on the reviewing Court:

"If the question is looked at only from the standpoint of one of facts, the substantial evidence test must be applied; but if the question is looked upon as one of law, that is whether or not the Examiner correctly concluded that, upon the facts found by him, (the claimant) received only custodial care, then the scope of review is broader, and this Court need not follow the Examiner's interpretation of the words 'custodial care.'" *Ridgely v. Secretary of Department of Health, Education and Welfare*, 345 F.Supp. 983, 988–989 (D.Md.1972), aff'd. 475 F.2d 1222 (4th Cir. 1973).

The explication of the legal standard to be applied in this case is no mean feat. The court is confronted with prolix statutory language, and corresponding administrative regulations which appear to deviate from the statutory provisions they ostensibly implement. A truncated exegisis of these materials is in order.

The Medicare Act authorizes payments for "post-hospital extended care services for

up to 100 days during any spell of illness." 42 U.S.C. Sec. 1395d(a)(2). Post-hospital extended care services are defined as "extended care services furnished an individual after transfer from a hospital in which he was an inpatient for not less than 3 consecutive days," with "transfer from a hospital" being defined as admission to a skilled nursing facility within a certain period of time after discharge from a hospital. 42 U.S.C. Sec. 1395x(i). A skilled nursing facility is an institution which is "primarily engaged in providing inpatients skilled nursing care and related services for patients who require medical or nursing care." 42 U.S.C. Sec. 1395x(j). Extended care services consist of certain items and services furnished to an inpatient of a skilled nursing facility and by such skilled nursing facility, including, *inter alia*, "(1) nursing care provided by or under the supervision of a registered professional nurse; (2) bed and board in connection with the furnishing of such nursing care; (3) physical . . . therapy . . . * * * (5) . . . drugs * * *; and (7) such other services necessary to the health of the patients as are generally provided by skilled nursing facilities . . . ." 42 U.S.C. Sec. 1395x(h).

In the case of post-hospital extended care services, payment can be made only if a physician certifies that such services "are or were required to be given because the individual needs or needed on a daily basis skilled nursing care (provided directly by or requiring the supervision of skilled nursing personnel)." 42 U.S.C. Sec. 1395f(a)(2)(C). Finally, 42 U.S.C. Sec. 1395y(a) provides that "[n]ot withstanding any other provisions of this subchapter, no payment may be made . . . for any expenses incurred for items or services * * * (9) where such expenses are for custodial care." "Custodial care," however is not statutorily defined.

In contrast, in the area of extended care services, the regulations define custodial care as "any care which does not meet the definition of extended care in Sec. 405.126–405.128." 20 C.F.R. Sec. 405.310(g). Post-hospital extended care is defined as "that level of care provided after a period of intensive hospital care for a patient who continues to require skilled nursing services (as defined in Sec. 405.127) on a continuing basis (see Sec. 405.128)" 20 C.F.R. Sec. 405.-126.

The distinction between the scheme set forth in the statute and that set forth in the regulations is one of linguistic subtlety. If the various statutory provisions are juxtaposed, it appears that post-hospital extended care services include nursing care provided by or under the supervision of a registered professional nurse to the inpatient of a skilled nursing facility. 42 U.S.C. Secs. 1395x(h), (i) and (j). In addition, it is possible to argue that by implication from 42 U.S.C. Sec. 1395f(a)(2)(C), the statute also requires that the nursing care furnished the inpatient of a skilled nursing facility must itself be skilled and needed on a daily basis. In contrast, the regulations provide that post-hospital extended care services consist of skilled nursing services provided on a continuing basis. The essence of the distinction is that the statute speaks of "skilled nursing *care*," whereas the regulations speak of "skilled nursing *services*." In addition, the statute does not define the exclusionary category of "custodial care," while the regulations define "custodial care" as that care which does not consist of "skilled nursing services" provided on a continuing basis.

The exercise in semantics is not without significance. In situations where the Secretary's denial of payment for post-hospital extended care services has rested on an analysis of the services received by the patient, courts have reversed the Secretary's finding, holding that the statutory scheme requires that the propriety of payments be determined with reference to the "total condition" of the patient. See e. g., *Ridgely v. Secretary of Department of Health, Education and Welfare*, 345 F.Supp. 983 (D.Md. 1972), aff'd 475 F.2d 1222 (4th Cir. 1973); *Schoultz v. Weinberger*, 375 F.Supp. 929 (E.D.Wis.1974); cf. *Samuels v. Weinberger*, 379 F.Supp. 120 (S.D.Ohio 1973); *Sowell v. Richardson*, 319 F.Supp. 689 (D.S.C.1970).

Although the distinction the courts have made between the "services received" and the "condition of the patient" standards has not always been clear, the significance of the distinction is suggested by the definition which the Courts have given for the term "custodial care":

"Indeed, it appears to this Court that the purpose of the custodial care disqualification in § 1395y(a)(9) was not to disentitle old, chronically ill and basically helpless, bewildered and confused people . . . from the broad remedy which Congress intended to provide for our senior citizens. Rather, the provision was intended to stop cold-blooded thoughtless relatives from relegating an oldster who could care for him or herself to the care of an ECF merely so that that oldster would have a place to eat, sleep, or watch television. But when a person is sick, especially a helpless old person, and when those who love that person are not skilled enough to take care of that person, Congress has provided a remedy in the Medicare Act, and that remedy should not be eclipsed by an application of the law and findings of fact which are blinded by bureaucratic economics to the purpose of the Congress." *Ridgely v. Secretary of Department of Health, Education and Welfare,* 345 F.Supp. 983, 993 (D.Md.1972), aff'd 475 F.2d 1222 (4th Cir. 1973).

"This seems to be a common sense view of what 'custodial care' is. It is care that could be administered by a layman, without any possible harm to the health of the one in custody. That is the simple reason why payment for it is not covered in a law the purpose of which is to pay medical benefits to the aged. This view of 'custodial care' is also in agreement with the definition of 'custodial' as found in Webster's Third New International Dictionary (1967 ed.) i. e., 'relating to or marked by guardianship or maintaining safely.' Thus mere 'custodial care' refers quite simply to guardianship for convenience that has no significant relation to medical care of any type." *Samuels v. Weinberger,* 379 F.Supp. 120, 123 (S.D. Ohio 1973).

On the basis of the regulations, the Secretary has limited compensable post-hospital extended care services to "skilled nursing services," and has characterized services falling outside that definition as excluded "custodial care." The Court has concluded that the latter standard is the appropriate standard to be applied to the instant case.

At all times during Estelle Klofta's stay at the Milwaukee Protestant Home, she received care that was related to her medical condition. Between October 15, 1971, and December 5, 1971, her attending physician prescribed waist restraints at all times, physical therapy for her right leg, weekly intramuscular injections and regular oral medications. She required assistance getting on and off the toilet, in and out of bed, and out of her wheelchair, and out and back to therapy. Due to edema her legs were filled with fluid, which required watching. She suffered from vaginal discharge and the nurses had to watch for hemorrhaging and cleanse her. (Tr. 19–20). She was frequently incontinent. (Tr. 80–91). On November 18, 1971, the Nursing Director of the Milwaukee Protestant Home prescribed skilled observation with respect to the increasing instability of her overall condition, with particular attention given to the patient's endometrium cancer and pulmonary, regional and osseous metastases. (Tr. 78).

Admittedly, Estelle Klofta was not *in extremis*; on the other hand, however, she was not a well woman. The Court can assume that the services she received did not constitute "skilled nursing services" under 20 C.F.R. Sec. 405.127, and yet nevertheless conclude that she did receive "skilled nursing care" within the terms of coverage of the Medicare Act. On the basis of this record, it appears that each of the administrative determinations denying payments in this case was premised upon an erroneous interpretation of the applicable legal standard. As an example, the Administrative Law Judge felt "constrained to affirm the prior denial of Medicare coverage" because of a medical interrogatory

based upon an analysis and evaluation of the relevant medical records by a board-certified specialist in pathology. (Tr. 19–20). An examination of the interrogatory reveals that the questions asked were directed to the nature of services Estelle Klofta had received, and that the interrogatory did not address the issue of her medical condition.

If the correct legal standard consisted of the nature of the services received, this Court would have no difficulty in concluding that the Secretary's decision in this case was fully supported by substantial evidence. But where, as here, the Court concludes that the Secretary failed to employ the correct legal standard in arriving at his conclusion, it feels constrained to reverse his findings.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be and it hereby is granted.

IT IS FURTHER ORDERED that defendant's motion for summary judgment be and it hereby is denied.

IT IS FURTHER ORDERED that judgment be entered for the plaintiff and against the defendant in the amount of $1,312.74.