**Alice KUEBLER, Plaintiff,**

v.

**SECRETARY OF the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CV 82–3360.**

United States District Court,
E.D. New York.

Feb. 7, 1984.

Robert & Schneider, by Ira S. Schneider, Hempstead, N.Y., for plaintiff.

Raymond J. Dearie, U.S. Atty. by Deborah Zwaney, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff brings this action pursuant to Sections 205(g) and 1869(b) of the Social Security Act ("Act"), as amended, 42 U.S.C. Sections 405(g), 1395ff(b), to review the final determination of the Secretary of Health and Human Services ("Secretary") denying plaintiff reimbursement for 100 days of care in a skilled nursing facility under Title XVIII of the Social Security Act, 42 U.S.C. Section 1395, *et seq.* Plaintiff and defendant cross-move for judgment on the pleadings pursuant to Rule 12(c) Fed.R.Civ.P.

### I.

On February 12, 1981, Mrs. Alice Kuebler was transferred from Eastern Long Island Hospital to San Simeon by the Sound Nursing Home ("San Simeon"), a skilled nursing facility. Plaintiff was notified that her care at San Simeon would not be covered by Medicare as it was custodial in nature. On reconsideration this determination was upheld. A hearing was held at plaintiff's request on June 15, 1982. After *de novo* consideration the Administrative Law Judge found Mrs. Kuebler not entitled to reimbursement under Medicare Part A, 42 U.S.C. Section 1395d(a)(2), for her confinement at San Simeon, holding her care there to be "custodial" and not requiring skilled nursing. The Appeals Council upheld the ALJ's determination. The Council's decision became the final decision of the Secretary on October 19, 1982.

At the time of her admission to San Simeon, plaintiff was 71 years old. She was admitted directly from the hospital after six days of confinement there occasioned by a fall at her home. Plaintiff's treating physician, Dr. Arnold Urist, strongly recommended that plaintiff's husband, Reverend Kuebler, place his wife in a nursing home and certified her need for

continuing skilled nursing care on February 12, 1981. On February 16, 1981, plaintiff was evaluated by the Utilization Review Committee ("URC") of the nursing home, which also certified her need for continuing skilled nursing care. In two subsequent evaluations the URC determined there was continued need for skilled nursing care.

On admission to San Simeon plaintiff's diagnosis was kyphoses, osteoporsis, a possible compression fracture of the L–4 vertebra and concommitant lowback syndrome, progressive cerebral arteriosclerosis with brain atrophy, a urinary tract infection, early Parkinson's disease and chronic depressive reaction by history. Plaintiff suffered from periods of confusion during which she did not recognize her husband (Tr. p. 45) and did not know her name (Tr. p. 77). She also had episodes of agitated, assaultive and abusive behavior and a history of wandering about, both at her home and at San Simeon. Such wandering occasioned the fall that caused the back injury.

During the hospital stay, Dr. Paul Ross, attending orthopedist, diagnosed the compression fracture after viewing x-rays. Previously, on March 18, 1980, plaintiff had undergone a brain scan and Dr. Daniel Patrick McCarthy diagnosed the brain atrophy. In addition, the plaintiff had a history of chronic depression. Darvacet (for pain), Dalmane (for insomnia) and vitamins were prescribed for plaintiff. Haldol, a psychotropic drug, was prescribed as needed to control agitation. The plaintiff was evaluated to be in unstable condition with a need for daily observation and modification of dosage in connection with administration of the Haldol.

### II.

At the outset the Court notes that three principles applicable to the case at hand have been established by district courts reviewing a denial of medicare benefits for skilled nursing facility care. The first is that the Court's review of the Secretary's determination is not limited to the substantial evidence standard, but extends

to a review of the Secretary's interpretation of the law. The second is that the correct legal standard for determining Medicare coverage is consideration of the patient's condition as a whole. The third is that where there is no directly conflicting evidence the treating physician's opinion must be given great weight.

### III.

The Secretary contends that Mrs. Kuebler's care at San Simeon was purely "custodial", as defined in 42 C.F.R. Section 405.126–28, and did not require a skilled nursing facility, hence she is ineligible for reimbursement under Medicare Part A. Under the regulations custodial care is defined as administrating routine medication, routine care of incontinence, assistance in dressing, eating and going to the toilet, and exercise supervision not done by a physical therapist. 42 C.F.R. Section 405.127(d). The courts have interpreted custodial care to be care that can be provided by a lay person without special skills and not requiring or entailing the continued attention of trained or skilled personnel. *Reading v. Richardson*, 339 F.Supp. 295, 300 (E.D.Mo.1972). Such custodial care is excluded from Medicare payments. 42 U.S.C. Section 1395y(a)(9). The Secretary contends that by a strict reading of the regulations Mrs. Kuebler's care falls squarely within the definition of custodial care excluded from Medicare payments.

■ The Secretary urges on this Court the standard of review articulated in the statute, 42 U.S.C. Section 405(g), and in *Richardson v. Perales*, 402 U.S. 389 (1971), limiting the scope of the district court's review to a determination of whether the Secretary's findings of fact are supported by substantial evidence on the record. Findings that are so supported are deemed conclusive. The Secretary, however, ignores another well-established standard by which the district court can review the Secretary's determination. For while the district court may be compelled to accept the Secretary's supported findings of fact, it is not bound to accept the Secretary's conclusions of law, her interpretation of the law, or her application of an incorrect legal

standard. *Klofta v. Mathews*, 418 F.Supp. 1139 (E.D.Wis.1976); *Breedan v. Weinberger*, 377 F.Supp. 734 (M.D.La.1974); *Schoultz v. Weinberger*, 375 F.Supp. 929 (E.D.Wis.1974); *Ridgely v. Secretary of H.E.W.*, 345 F.Supp. 983 (D.Md.1972), *aff'd* 475 F.2d 1222 (4th Cir.1973); *Reading v. Richardson*, 339 F.Supp. 295, 297 (E.D.Mo. 1972); *Sowell v. Richardson*, 319 F.Supp. 689 (D.S.C.1970). In the case at hand the Secretary contends that her examination in light of the regulations of the treatment and services rendered by San Simeon is the correct standard for determining the nature of Mrs. Kuebler's care.

The courts, however, have on numerous occasions rejected this analysis. *Klofta v. Mathews*, 418 F.Supp. at 1142 (and cases cited therein). In reviewing the interpretation and application of the Act the courts have consistently held that the legal standard for determining the need for skilled nursing care is not an analysis of services provided but *consideration of the patient's condition as a whole*. *Klofta v. Mathews*, 418 F.Supp. at 1143; *Hayner v. Weinberger*, 382 F.Supp. 762, 766 (E.D. N.Y.1974); *Ridgely v. Secretary HEW*, 345 F.Supp. at 988; *Sowell v. Richardson*, 319 F.Supp. at 692. This standard is based on a benevolent legislative purpose. "The legislation which created health insurance for the aged is remedial and therefore to be construed liberally .... Neither the courts nor the Secretary should, in the interest [of] minimizing costs so interpret the provisions of the Act as to frustrate its purpose." *Sowell v. Richardson*, 319 F.Supp. at 691 (citations omitted). And as Chief Judge Northrop pointedly observed in *Ridgely v. Secretary of HEW*, 345 F.Supp. at 993:

> Indeed, it appears to this Court that the purpose of the custodial care disqualification in Section 1395y(a)(9) was not to disentitle old, chronically ill and basically helpless, bewildered and confused people ... from the broad remedy which Congress intended to provide for our senior citizens. Rather, the provision was intended to stop cold-blooded and thoughtless relatives from relegating an oldster

who could care for him or herself to the care of an [Extended Care Facility] merely so that the oldster would have a place to eat, sleep, or watch television. But when a person is sick, especially a helpless old person, and when those who love that person are not skilled enough to take care of that person, Congress has provided a remedy in the Medicare Act, and that remedy should not be eclipsed by an application of the law and findings of fact which are blinded by bureaucratic economics to the purpose of the Congress.

Repeatedly the Secretary has urged on the courts the limiting technical definition and analysis of custodial care presented in her memorandum in this case. Repeatedly the courts have rejected them. Observing that "custodial care" is not defined by statute the courts have consistently interpreted the term in light of the statute's benevolent congressional purpose using a nontechnical approach, common sense meaning, and consideration of the needs and underlying condition of the claimant insured as a whole. *Klofta v. Mathews,* 418 F.Supp. 1142–43; *Samuels v. Weinberger,* 379 F.Supp. 120, 123 (S.D.Ohio 1973); *Breeden v. Weinberger,* 377 F.Supp. at 737; *Schoultz v. Weinberger,* 375 F.Supp. at 932; *Ridgely v. Secretary of HEW,* 345 F.Supp. at 990; *Reading v. Richardson,* 339 F.Supp. at 300; *Sowell v. Richardson,* 319 F.Supp. at 691. The Court finds this analysis and interpretation persuasive.

IV.

It is clear from the Secretary's written determination that the technical analysis of services rendered standard was the one used in reviewing Mrs. Kuebler's claim. The Court having rejected this interpretation of the law as erroneous turns to an evaluation of the patient's condition as a whole in determining her need for skilled nursing care and entitlement to Medicare coverage.

It is clear from the testimony of Reverend Kuebler and the reports and other data from the treating physicians and San Simeon that Mrs. Kuebler was old, bewildered, suffering from a possible compression fracture, in unstable condition, and in constant need of supervision and monitoring. She wandered and was subject to falling. She did, in fact, fall during her stay at San Simeon and soft restraints were recommended to prevent the patient from causing herself further injury or aggravation of the existing fracture from more falls. In addition to supervised ambulation, Mrs. Kuebler required monitoring at meals to be sure she did not drift off and forget to finish her food. Finally, the patient had bouts of agitation and assaultive and abusive behavior that were controlled by administering psychotropic drugs. This required monitoring, supervision, and evaluation by skilled nursing personnel as need and dosages varied and had to be coordinated with other prescribed medicines. Review of the whole record and all aspects of Mrs. Kuebler's condition shows progressive deterioration to the point where she was a danger to her own wellbeing and needed skilled care. In contrast, the Secretary has focused narrowly on the exact services provided without looking to the overall purpose they served and the underlying condition they controlled. It would appear that in reaching her determination the Secretary examined in isolation the dry list of San Simeon's charted services and ignored evidence of the underlying condition. This is the only explanation for the Secretary's assertion that the patient was in stable condition in the face of medical opinion to the contrary.

It is apparent from the record that Mrs. Kuebler's condition had worsened over a period of years and that Reverend Kuebler had felt morally compelled to care for her at home. It was only the urging of Dr. Urist and the inescapable evidence of the inadequacy of home care that led Reverend Kuebler to put the plaintiff in San Simeon. Although many specific services rendered to Mrs. Kuebler were routine and seemingly unskilled, in the aggregate they were treatment of her medical condition. And although taken singly Mrs. Kuebler's ailments might not seem to require skilled nursing care, taken together they made her

a chronically ill, disabled old woman in need of monitoring and care by skilled personnel in order to maintain what health she had left and prevent any further injury. To contend that her care was merely custodial and therefore could have been provided by a lay person is to ignore the fact that a lay person, in the form of her husband, was unable to provide adequate care. In sum, this Court concludes that considering Mrs. Kuebler's condition as a whole she required the skilled care rendered by San Simeon.

### V.

In addition to ignoring the correct legal standard in assessing the need for skilled care, the Secretary's determination has also ignored an important principle in evaluating and weighing the evidence on the record. While the opinion of Dr. Urist, the attending physician, is not binding on the Secretary, where there is no direct conflicting evidence his decision has great weight. *Breeden v. Weinberger,* 377 F.Supp. at 737. Failure to give the treating physician's opinion due weight and regard severely undermines the support for the Secretary's findings. *Ridgely v. Secretary of HEW,* 475 F.2d at 1224.

Under the Act physician certification for the specific level of care provided is required before Medicare will pay. 42 U.S.C. Section 1395f(a)(2)(C). Here, Dr. Urist not only recommended that Mrs. Kuebler be placed in a skilled nursing facility, but repeatedly certified the need for this level of care (Tr. pp. 63, 97). The Utilization Review Committee for San Simeon also reviewed Mrs. Kuebler's condition and concluded there was need for skilled nursing services. (Exhibits 9 and 13). In disregarding these expert assessments the Secretary declared that "the weight of the medical evidence in the file . . . is indicative to the contrary." The medical evidence that apparently outweighed the treating physician's and UCR's opinions is unidentified. There is no contrary opinion from another physician in the record. There is no directly contrary medical evidence cited or presented. It is clear that the Secretary has assessed the list of services rendered by San Simeon and found her medical judgment more sound than that of medical professionals. Such findings and the resultant determination are not supported by substantial evidence. Rather, they contradict the great weight of the evidence.

The clear intent of Congress was that primary responsibility for determining a patient's need for skilled nursing care rests with the physician, *Reading v. Richardson,* 339 F.Supp. at 300–01. It is the physician who has the pivotal role in assessing the patient's needs and care under the Act. *Hultzman v. Weinberger,* 495 F.2d 1276, 1279 (3d Cir.1974); *Ridgely v. Secretary of HEW,* 475 F.2d at 1224. Nevertheless, it was not Congress' intent that the treating physician should have free rein over utilization of health care facilities and Medicare expenditures. Consequently, the states are required to establish Utilization Review Committees to assure that under the Act patient's will not receive a greater or lesser level of care than they need. 42 U.S.C. Section 1395x(k); 42 C.F.R. Section 1035. These committees include independent physicians and are intended to ensure economical, efficient use of medical facilities and prevent unnecessary Medicare payments without substituting bureaucratic goals for medical judgment. *Hultzman v. Weinberger,* 495 F.2d at 1280–81. The Secretary has used the determinations of UCR's in previous cases to support a denial of medical payments. *Hayner v. Weinberger,* 382 F.Supp. at 764. The Secretary should not now be heard to preemptorily discount the findings and recommendations of the UCR because they do not serve her purposes. *See Hultzman v. Weinberger,* 495 F.2d at 1281.

### VI.

The Court concludes that the Secretary erred in holding that Mrs. Kuebler was not entitled to have payments made on her behalf for services provided by San Simeon from February 12, 1981 to the end of the first 100 days of her stay there during 1981. The Secretary both erred in her interpretation of legal standard to be applied in evaluating Mrs. Kuebler's eligibility and

made findings not supported by substantial evidence. The Court finds that Mrs. Kuebler's condition was such that she required the skilled nursing care and services provided by San Simeon.

Accordingly, the decision of the Secretary denying Medicare benefits is reversed, and it is hereby

ORDERED, that plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied, and it is further

ORDERED, that judgment be entered for payment of Medicare benefits on plaintiff's behalf for San Simeon's services to her for a period of 100 days beginning February 12, 1981.

SO ORDERED.