**Wolfgang HIRSCH, Plaintiff,**

v.

**Otis BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 84 Civ. 4531 (SWK).**

United States District Court, S.D. New York.

March 7, 1987.

Jonathan David Bachrach, New York City, for defendant.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City by Rosemarie E. Matera.

KRAM, District Judge.

Wolfgang Hirsch brings this action to review the final determination of the Secretary of Health and Human Services denying him reimbursement under Medicare Part A, 42 U.S.C. § 1395d(a)(2) for the costs of his medical treatment at Fort Tryon Nursing Home. Hirsch entered Fort Tryon following treatment at Columbia Presbyterian Hospital for two broken wrists. He also suffered from a pre-existing colostomy.

Pursuant to this Court's order of May 16, 1986, Magistrate Buchwald issued a Report and Recommendation (the "Report") in this case. The Magistrate found that 1) the care plaintiff received at Fort Tryon Nursing Home was "custodial care", 42 C.F.R. § 409.33(d) rather than "skilled care", 42 C.F.R. § 409.31.33; 2) Hirsch's nursing home care was not for a condition for which he had received inpatient treatment, 42 C.F.R. § 409.31(b), and Hirsch did not suffer "special medical complications" caused by his pre-existing condition which would render the services reimbursable, 42 C.F.R. § 409.32(b); and 3) Hirsch's rehabilatative treatment, which could qualify as

skilled care, 42 C.F.R. § 409.31(b)(1) did not meet the daily care requirement of 42 C.F.R. § 409.34. As a result, the Magistrate ruled that Hirsch was not entitled to Medicare benefits.

Hirsch makes the following objection to the Report: 1) as a practical matter, he could obtain treatment only at a skilled nursing facility on an inpatient basis; 2) the Magistrate applied an incorrect legal standard in determining that special medical complications did not exacerbate his prior condition such that he now required skilled care; 3) the cumulative effect of his symptom created a special medical condition; 4) his eligibility for coverage was improperly determined solely from his condition on the last day of treatment; 5) each treating physician and nurse stated that he required skilled care; and 6) the notice of hearing was insufficient and denied him due process.

The Court concurs in the Report's rendition of the facts. The Court disagrees, however, with the Report's application of the law to the facts and the finding that there is substantial evidence to support the Secretary's decision that Hirsch needed and received only custodial care. Specifically, the Court finds that Hirsch's broken wrists so exacerbated his pre-existing condition that he required skilled nursing care, that he received a complex plan of treatment at Fort Tryon which constituted skilled care, and that he needed observation of his overall condition.[1] The Secretary's decision that he did not receive skilled care is not supported by substantial evidence and is reversed.

## DISCUSSION

■ The Medicare statute, remedial in nature, is to be construed broadly. *Gartmann v. Secretary of the United States Department of Health and Human Services*, 633 F.Supp. 671, 679 (E.D.N.Y.1986). The purpose of the custodial care exclusion, which prohibits Medicare reimbursement for custodial as opposed to skilled care:

was not to disentitle old, chronically ill and basically helpless, bewildered and confused people ... from the broad remedy which Congress intended to provide for our senior citizens. Rather, the provision was intended to stop cold-blooded and thoughtless relatives from relegating an oldster who could care for him or herself to the care of an [extended care facility] merely so that that oldster would have a place to eat, sleep, or watch television. But when a person is sick, especially a helpless old person, and when those who love that person are not skilled enough to take care of that person, Congress has provided a remedy in the Medicare Act, and that remedy should not be eclipsed by an application of the law and findings of fact which are blinded by bureaucratic economics to the purpose of the Congress.

*Ridgely v. Secretary of the Department of Health, Education and Welfare*, 345 F.Supp. 983, 993 (D.Md.1972), *aff'd*, 475 F.2d 1222 (4th Cir.1973) (quoted in *Klofta v. Mathews*, 418 F.Supp. 1139, 1143 (E.D. Wisc.1976)).

■ Skilled care is defined in the regulations as care "so inherently complex that it can be safely and effectively performed only by, or under the supervision of, professional or technical personnel." 42 C.F.R. § 409.32(a). Custodial care is care that can be provided by a lay person without special skills and not requiring or entailing the attention of trained or skilled personnel. *Kuebler v. Secretary of the United States Department of Health and Human Services*, 579 F.Supp. 1436, 1438 (E.D.N.Y.1984), (citing *Reading v. Richardson*, 339 F.Supp. 295, 300 (E.D.Mo. 1972)). In determining whether a person received skilled or custodial care, the Court must consider the patient's condition as a whole, and not merely analyze the services provided. *Gartmann*, 633 F.Supp. at 679;

---

**1.** Regarding the requirement that the patient receive treatment for a condition for which he received inpatient hospital services, 42 C.F.R. § 409.31(b), Hirsch was treated at Fort Tryon for both his broken wrists and his colostomy.

The effect of the broken wrists on the colostomy created a "special medical complication", 42 C.F.R. § 409.32(b), which satisfies the inpatient services requirement as well.

Roth v. Secretary of Health and Human Services, 606 F.Supp. 636, 639 (W.D.N.Y. 1985); Kuebler, 579 F.Supp. at 1438; Klofta, 418 F.Supp. at 1142; Ridgely, 345 F.Supp. at 991. The opinion of a patient's treating physician as to the level of care provided, if not contradicted, is entitled to great weight. Kuebler, 579 F.Supp. at 1438.

█ Applying these principles to the instant case, the Secretary's decision that Hirsch's care at Fort Tryon was custodial is not supported by substantial evidence. It is clear from the record that Hirsch's pre-existing colostomy was exacerbated by his broken wrists in that his medication for pain threatened irritation to his colostomy and required observation. See 42 C.F.R. § 409.32(b) and example therein. Furthermore, Hirsch's broke wrists transformed his colostomy from a self-care condition to one for which he needed assistance.

In evaluating the care Hirsch received, the Secretary relied too heavily on analyzing each service Hirsch received separately. Hirsch did receive a number of services which individually are considered custodial in nature, such as administration of oral medication for pain (dixogin, lasix, prednisone, lomotil, Tylenol II and darvocet), general maintenance and care of his colostomy, and assistance in dressing, eating, and using the toilet. See 42 C.F.R. 409.33(d); Singer v. Schweiker, 82 Civ. 0154, slip op. (S.D.N.Y. June 23, 1982) (available Mar. 2, 1987, on LEXIS, Genfed library, Courts file). However, considering Hirsch's condition as a whole, and recognizing that Hirsch received an integrated plan of care which had to be administered properly to preserve his health, it is clear that Hirsch received skilled care.

When he entered Fort Tryon, Hirsch was a 75 year old man suffering from two broken wrists and a colostomy. The record indicates that although lucid, he was also weak. He was clearly unable to care for his colostomy as he had previously done,

and unable to care for his broken wrists. At Fort Tryon, his doctor prescribed a plan of care for Hirsch which included administering the medication described above, and monitoring for the side effects of that medication on his colostomy, which could have included GI bleeding from the prednisone and dixogin toxicity. The record also indicates that the doctor ordered the nurses to determine when and in what dosage he should receive medication for pain, and that they often did so. Monitoring for the side effects of medication constitutes skilled care. See 42 C.F.R. § 409.33(a)(2). See Howard v. Heckler, 618 F.Supp. 1333, 1335 (E.D.N.Y.1985) (monitoring and adjustment of medication according to varying conditions); Kuebler, 579 F.Supp. at 1437 (modification of drug dosage); Klofta, 418 F.Supp. at 1143 (skilled observation with respect to increasing instability of overall condition); Allen v. Richardson, 366 F.Supp. 516, 522 (E.D.Mich.1973) (skilled nursing care to observe guarded condition). Hirsch's plan of care also included necessary rehabilitation for his broken wrists and monitoring the circulation in his hands and fingers. In light of Hirsch's helpless condition, it is clear he received a complex plan of care at Fort Tryon which could only have been managed by a skilled staff. See 42 C.F.R. § 409.33(a). Thus, "[a]lthough ... specific services rendered to [Hirsch] were routine and seemingly unskilled, in the aggregate they were treatment of [his] medical condition." Kuebler, 579 F.Supp. at 1439. The Secretary's decision that Hirsch received custodial care is not supported by substantial evidence, and is reversed.

The Court notes that denying reimbursement to Hirsch would not implement the purpose of the Medicare Act. Although he had previously been able to care for his colostomy, his broken wrists prevented him from doing so. As his treating physician indicated, it would be very difficult to find a lay person to do so, and there is no

evidence that a member of Hirsch's family could care for him. Hirsch also needed other services which his family could not provide. Thus, Hirsch was sick enough so that his family could not provide for him, and he was not merely relegated to a skilled care facility.

The Court declines to adopt the Magistrate's Report and orders the Secretary to reimburse Hirsch for the services he received at Fort Tryon.

SO ORDERED.