William J. HURLEY, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

No. 84 C 4270.

United States District Court, E.D. New York.

Nov. 18, 1987.

Robert, Huber & Lerner (Charles Robert, of counsel), Hempstead, N.Y., for plaintiff.

Ronald E. Robertson, Gen. Counsel, Terry Coleman, Chief Counsel, Health Care Financing Admin. (Thomas K. Stuber, Office of the Gen. Counsel, of counsel), U.S. Dept. of Health and Human Services, Brooklyn, N.Y., for defendant.

MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff William J. Hurley brought this action to review a final determination of defendant Secretary of Health and Human Services denying payment of certain benefits under 42 U.S.C. § 1395ff(b), the so-called Hospital Insurance part of the Federal program of health insurance for the aged and disabled, Medicare Part A. Defendant moves for judgment on the pleadings affirming the decision of defendant. The issue is whether substantial evidence supports the decision.

The Medicare legislation takes account of three categories of care for those of the aged and disabled in need of it, first, inpatient or "acute" hospital care, 42 U.S.C. § 1395d(a)(1), second, post-hospital extended or "skilled nursing facility" care, 42 U.S.C. § 1395d(a)(2)(A), and third, "custodial" care, 42 U.S.C. § 1395f(a)(2)(B). The Medicare program provides for certain benefits for the first two categories and none for the third.

In the present case plaintiff concedes that he was not in need of acute hospital care for the period in question, October 2, 1981 through October 23, 1981, but asserts

he is entitled to benefits for skilled nursing facility care for that period. The defendant decided he neither needed nor received reimbursable skilled nursing facility care.

On September 4, 1981, the Community Hospital at Glen Cove, New York admitted plaintiff after he suffered a head injury. On October 1, 1981, the hospital's Utilization Review Committee notified him that he no longer needed acute care and that his acute care hospital benefits under Medicare would end on October 2, 1981. He requested review and remained in the hospital until October 23, 1981. Both the Utilization Review Committee of the hospital and the Nassau Physicians Review Organization agreed that he was not entitled to acute care benefits. He then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ found after hearing that during the period in question, October 2 through 23, 1981, plaintiff neither required nor received acute care or skilled nursing care. The Appeals Council remanded the matter for the purpose of securing testimony from a medical advisor. After receiving such testimony, the ALJ again denied benefits. The Appeals Council denied review.

The facts are largely undisputed. Plaintiff was admitted to the hospital on September 4, 1981 by his treating physician Dr. Robert Goodman, with a diagnosis of a cerebrovascular accident. The admitting report states that patient fell, striking the back of his head on the ground. Upon arrival at the hospital he was aphasic with a weakness of all extremities, suffered from diminished reflexes, and had a facial droop. He was placed in an intensive care unit but was moved two days later to a regular room.

From September 4 to October 1 numerous doctors observed him. Their records indicate a gradual improvement in walking and attentiveness. Complete neurological examinations, including two CAT scans and a lumbar puncture, showed moderate cerebral atrophy with no evidence of subdural hematoma or intracerebral mass. He also received physical therapy.

During this period the hospital's Utilization Review Committee, chaired by Dr. Goodman, periodically evaluated the patient's need for hospitalization. According to the continued stay review forms, the Committee approved plaintiff's stay until October 1, 1981 when it denied further stay. The form states that patient "appears ready for discharge" (Record at 93). The hospital terminated plaintiff's acute care Medicare benefits the following day. As evidenced by New York State Department of Health DMS–8 form, the hospital sought a placement for plaintiff in a nursing facility apparently without success. The form does not indicate the type of facility required.

Records made on or after October 1 show the following: An October 1 neurological record states, "Patient is independent in all areas—needs supervision only. Further gait training not indicated" (Record at 104). Between October 2 and October 11, 1981, the nursing notes state that plaintiff at times was confused, agitated, and required restraints. He wandered out of the ward on at least two occasions. However, the notes also describe plaintiff as alert, calm, and cooperative. He was able to provide his own morning care, to sleep without distress, to walk and to eat well. Plaintiff did not require or receive gait training during this time.

An October 6 nursing report reads: "seen by Goodman. Discussing where pt. will go—either nsg home or home (in care of) his wife" (Record at 139). An October 9 doctor's report states that a neurological workup was negative and that from a neurological point of view it would be "ok" to discharge the patient (Record at 105). An October 14 doctor's notation states, "Remains confused—will [illegible] need custodial care" (Record at 106). A social worker's report dated October 20 states that plaintiff had improved vastly and that he no longer needed nursing care but could be discharged to his home.

The ALJ heard testimony from plaintiff's wife and daughter. The only medical testimony came from Dr. Harold Berson, the medical advisor. He generally testified

that plaintiff neither required nor received skilled care during the disputed period. He did however describe the period, October 2 to October 11, as a "gray area" (Record at 63). He stated that because plaintiff required chair restraints on a few occasions in this time period arguably he received skilled care. However, he also stated that both skilled and non-skilled facilities use such restraints.

The pertinent regulations define custodial care as any care that is not posthospital skilled nursing facility care. 42 C.F.R. § 405.310(g). Skilled care may be given in a skilled nursing facility or in a hospital if a physician certifies no skilled nursing facility bed is available. 42 C.F.R. § 1625(b). It includes those services, among others, that (1) are ordered by a physician, (2) require the skills of technical or professional personnel, and (3) are furnished by such professional personnel. 42 C.F.R. § 409.31(a). The services must also be (1) necessary on a daily basis, (2) for a condition which was treated in a hospital, and (3) those which, "as a practical matter, can only be provided in a skilled nursing facility." 42 C.F.R. § 409.31(b). "The service must be so inherently complex that it can be safely and effectively performed only by, or under the supervision of, professional or technical personnel." 42 C.F.R. § 409.32(a).

As noted above, plaintiff concedes that he no longer needed acute care after October 1, 1981 but challenges the ALJ's conclusion that he neither required and nor received skilled care between October 2 and October 23. Although in the first opinion the ALJ rejected plaintiff's contention that there were no skilled nursing facility beds available, he made no such finding in the second opinion.

The court may not reverse the defendant's determination as to Medicare entitlements if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ The ALJ's decision is supported by substantial evidence. The medical advisor testified that plaintiff neither received nor required skilled care during the disputed period. Although he expressed doubts about a "gray area" during which plaintiff required restraints, he also testified that such restraints were available in both skilled and non-skilled facilities. The evidence supports the conclusion that in light of plaintiff's condition the treatment given him was not so "inherently complex" that it had to be performed or supervised by technical personnel, 42 CFR § 409.32(a). Nor was the treatment such that "as a practical matter" it could "only be provided" in a skilled nursing facility. 42 CFR § 409.31(b)(3).

In addition to Dr. Berson's testimony, other evidence supports the ALJ's conclusion. The neurological progress reports indicate that plaintiff "needed supervision only" as of October 1, 1981. These reports, as well as the DMS–8 form suggest placement in a nursing home but do not specify a skilled nursing facility. The nursing and social work records confirm Dr. Berson's conclusion that, at most, plaintiff required restraints because of his occasional wanderings. The fact that on October 6 Dr. Goodman discussed with plaintiff the possibility of returning home suggests that skilled care was unnecessary.

Contrary to plaintiff's claims, the ALJ considered not only the services provided but plaintiff's condition as a whole (Record at 24). *Cf. Kuebler v. Secretary,* 579 F.Supp. 1436, 1438 (E.D.N.Y.1984).

■ Plaintiff also urges that the treating physician rule used in disability cases should be equally applicable here and that thus the court should give controlling weight to the opinion of plaintiff's treating physician, Dr. Goodman, unless it is contradicted by substantial evidence. *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986).

The Second Circuit has yet to apply this rule to a Medicare case. In *Friedman v. Secretary,* 819 F.2d 42, 46 (2d Cir.1987), that court declined to consider whether the rule should apply as a matter of law because the physician's conclusions were am-

biguous and the identity of the doctor was in question. In this case too, Dr. Goodman's letter, written six months after plaintiff left the hospital, hardly consists of the kind of clear and contemporaneous opinion as to the treatment of plaintiff that might merit special weight.

The letter confirms the plaintiff's disallowance by the Utilization Review Committee (chaired by Dr. Goodman himself) on October 1. The next sentence reads, "During this time he was awaiting placement in a skilled nursing facility as it was felt that he had a permanent organic brain syndrome ..." (Record at 227). Although plaintiff urges that the words "during this time" refer to the period after October 1, the only antecedant period the letter mentions is September 4 to October 1, the uncontested period. The letter does say plaintiff awaited placement in a nursing facility during the contested period, but without specifying a skilled nursing home. And, it concludes by saying, "... his disallowance by the committee, while technically correct, does seem most unfair to the patient."

The determination of the ALJ is affirmed. Defendant's motion for judgment on the pleadings is granted. So ordered.