**De Eldon E. HAYNER, Plaintiff,**

v.

**Caspar WEINBERGER, Secretary of the Department of Health, Education and Welfare of the United States, Defendant.**

**No. 73–C–1007.**

United States District Court,
E. D. New York.

Sept. 26, 1974.

Cullen & Dykman, Garden City, N. Y., for plaintiff; Peter J. Mastaglio, Garden City, N. Y., Serge Joffe, Brooklyn, N. Y., of counsel.

David G. Trager, U. S. Atty., E. D. N. Y., Borge Varmer, Regional Atty., Jerome T. Levy, Deputy Regional Atty., Office of the Gen. Counsel, Dept. of H. E. W., George H. Weller, Asst. U. S. Atty., for defendant.

BARTELS, District Judge.

Plaintiff, De Eldon Hayner, brings this action against the Secretary of Health, Education and Welfare ("the Secretary") to review his final decision denying plaintiff payment of benefits under the Federal program of health insurance for the aged under the Social Security Act ("the Act"), 42 U.S.C.A. § 1395 et seq. Hayner incurred expenses for treatment of his late wife ("Patient") at the Manhasset Medical Center during the period from June 19, 1971 to August 9, 1971, but was denied reimbursement for the period after July 5, 1971 by the decision of the Administrative Law Judge ("ALJ") rendered February 1, 1973, which in turn was upheld by the Appeals Council of the Social Security Administration on May 10, 1973. The specific issue presented is whether Mrs. Hayner's inpatient care during the period in question consisted of such services which were required to be rendered on an inpatient basis for treatment of her conditions.

The Act provides at 42 U.S.C.A. § 1395f(a)(3) that payments may be made for inpatient hospital services only where "a physician certifies that such services are required to be given on an inpatient basis for such individual's med-

ical treatment, or that inpatient diagnostic study is medically required and such services are necessary for such purpose. . . ." The ALJ found that the care given the Patient during the period after July 5th could have been provided in a setting other than a general hospital and that accordingly the inpatient services rendered did not fall under the coverage of the Act under the above provision. In addition he decided that the care given the Patient during this period was "custodial" in nature and was therefore specifically excluded from coverage under 42 U.S.C.A. § 1395y(a)(9). Both parties move under Rule 12(c), F.R.Civ.P., 28 U.S.C.A., for judgment on the pleadings and the record.

On June 19, 1971, the Patient, who was then 83 years old, was admitted to the Manhasset Medical Center on the instructions of her physician, Dr. Rogers, because of weakness, dyspnea, and inability to walk without difficulty. It is not disputed that from June 19th to July 5th, 1971 her hospitalization was required for diagnostic study and coverage was granted for that period. Sometime around July 1st it was determined by Dr. Rogers that the Patient was suffering from carcinoma with hepatic metastases and that her condition was "pre-terminal." He concluded that it was impractical to offer her further treatment at the hospital and on July 5th he recommended to plaintiff that his wife be transferred to an extended care facility. The Patient remained at the Medical Center until August 9th however, and during that time she received the following treatment: (1) Daily visits by Dr. Rogers or an associate; (2) Daily care by registered nurses; (3) Weekly change of a Foley catheter; (4) Daily irrigation of the catheter; and (5) Twice daily taking of blood pressure. Dr. Rogers stated that during this period there was little help he could contribute to her from a medical point of view. Simultaneously, the plaintiff, who was himself 80 years old, was diligently attempting to place his wife in a suitable extended care facility. After unsuccessfully attempting to admit her to several hospitals and nursing homes in New York and New Jersey, plaintiff was finally able to place her in the St. Rose Home in Manhattan on August 9, 1971, where she died on August 21, 1971.

Certification for inpatient hospital care was last granted in this case by Dr. Rogers on July 7th, at which time he estimated that only two days further hospitalization would be required. There is also evidence in the record that the Utilization Review Committee of the hospital did not approve the Patient's hospitalization after July 5th, which fact alone would preclude recovery for inpatient services under 42 U.S.C.A. § 1395f(a)(7). In view of Dr. Rogers' recommendation of transfer to an extended care facility, his July 7th certification, and the Utilization Review Committee's recommendation, we find that the Secretary's decision denying the necessity of inpatient hospital care after July 5, 1971 is supported by substantial evidence.

The troublesome and rather unique issue in this case however is whether an inpatient who becomes eligible for transfer to an Extended Care Facility from a General Hospital and thus for extended care coverage under 42 U.S.C.A. § 1395f(a)(2)(C), loses all coverage under the Act during the period she is forced to remain in the General Hospital for treatment after the date of her eligibility simply because she is unable, without any fault of her own, to transfer to an Extended Care Facility. It appears from the record in this case that extended care treatment was required since Dr. Rogers recommended that the Patient be transferred to such a facility and since she was not discharged from the Medical Center until the transfer could be made. It is plain that her condition was such that she could not be adequately cared for at home. Unlike Boorstein v. Richardson, CCH Medicare and Medicaid Guide, ¶ 26,727 (E.D.Pa., July 16, 1973), where all benefits were denied to a patient who without excuse remained in

the hospital after being told that transfer to a nursing home was appropriate, the plaintiff here has shown that he made all reasonable efforts to transfer his wife to an extended care facility. This 80-year old plaintiff testified at the hearing that although he received no assistance in finding a suitable facility from Dr. Rogers or the Medical Center, nevertheless he began searching for one. In fact, he thumbed the pages of the telephone book and contacted as many as a dozen facilities, including one as far away from his home on Long Island as Philadelphia, and on one occasion travelled to Morristown, New Jersey in an unsuccessful effort to admit his wife to a suitable facility.

In determining whether to grant reimbursement in this case we begin with the axiom that "[t]he congressional policy underlying the federal social security legislation requires the courts to interpret the Act liberally, and any doubts should be resolved in favor of coverage." Herbst v. Finch, 473 F.2d 771, 775 (2d Cir., 1972); *accord,* Gold v. Secretary, 463 F.2d 38 (2d Cir., 1972); Rasmussen v. Gardner, 374 F.2d 589 (10th Cir., 1967); Sowell v. Richardson, 319 F.Supp. 689 (D.C.S.C., 1970); Lord v. Richardson, 356 F.Supp. 232 (S.D. Ind., 1972). The Act should be construed to effectuate its overriding purpose even if the words used leave room for a contrary interpretation. Haberman v. Finch, 418 F.2d 664 (2d Cir., 1969). By providing under 42 U.S.C.A. § 1395f(a)(2)(C) for coverage of treatment in extended care facilities, it seems to us that Congress intended to provide needed treatment to patients who otherwise would be compelled to remain in a general hospital. 1965 U.S.Code Cong. & Adm.News, p. 1971; Hultzman v. Weinberger, 495 F.2d 1276 (3d Cir.,

1974). It would be anomalous to say that Congress intended to leave a gap in coverage for a patient who is lying on her back in a general hospital and who, through no fault of her own, could not immediately obtain extended care treatment elsewhere and at the same time provide such coverage if she could have obtained such treatment in another facility. We believe that such a denial of coverage would not only be harsh and unjust but also would not comport with the spirit of the Act. We therefore conclude that plaintiff is entitled to the amount of reimbursement, if any, to which he would have been entitled to had his wife been placed in an extended care facility on July 5th. We reach this conclusion on the particular facts of this case on the theory of impossibility of performance.

But this does not end the case because the Act requires compliance with certain conditions before reimbursement is permitted under the extended care provisions, 42 U.S.C.A. § 1395f(a)(2)(C). Coverage is allowed where extended care treatment is certified by a physician as necessary for a continuation of treatment received in a general hospital. While Dr. Rogers did not specifically certify the need for such care, he could do so retroactively if her condition merited such treatment. Reading v. Richardson, 339 F.Supp. 295 (E.D.Mo., 1972).[1] It is obvious from the record that the treatment the Patient received after July 5th was in all respects for the same conditions which required her hospitalization prior to that date. While she was admitted to the Medical Center for dyspnea, she was treated for terminal cancer following her diagnosis. *Cf.* Sowell v. Richardson, *supra.* We find therefore that the Patient could qualify for extended care

---

[1]. The record indicates that Dr. Rogers recommended placement in an extended care facility, although on the recertifications dated July 1st and July 5th he checked the space marked for post-hospital care in a "nursing home" not that marked "extended care facility." The distinction between an extended care facility and a nursing home is unclear in the Act and regulations. Numerous cases, however, hold that extended care treatment may be provided in a nursing home. See e. g., Ridgely v. Secretary, *infra*; Sowell v. Richardson, *supra*; Reading v. Richardson, *supra.*

coverage if the necessary certification is obtained.

 However, if, as was found by the ALJ, the care given the Patient after July 5th was "custodial care," it would be excluded from coverage under the Act even if it were rendered in an extended care facility. 42 U.S.C.A. § 1395y(a)(9). While the term "custodial care" is not defined in the Act, it has been interpreted to connote a level of routine maintenance or supportive care which need not be provided in an institutional setting by skilled professional personnel. Ridgely v. Secretary, 475 F. 2d 1222, 1223 n. 3 (4th Cir., 1973); Sowell v. Richardson, *supra*; Sokoloff v. Richardson, CCH Medicare and Medicaid Guide, ¶ 26,720 (E.D.N.Y., June 26, 1973). A determination of this question requires consideration not only of the care given the patient but also of her physical condition. *Ridgely*; *Sokoloff*; *Sowell, supra*. The ALJ, in finding that the care provided the Patient in this case did not require inpatient hospital treatment, nevertheless stated that it "could have been performed in an extended care facility," and at the same time he noted that the Foley catheter treatment required skilled professional care. See Lord v. Richardson, *supra*, 356 F.Supp. at 234. Not only did the Patient require skilled care but her "pre-terminal" condition was apparently unstable enough to require daily visits by Dr. Rogers or an associate and the supervision of registered nurses.[2] See Pippin v. Richardson, 349 F.Supp. 1365 (M.D.Fla., 1972). The Act specifies that the findings of the ALJ, if supported by substantial evidence, are conclusive, 42 U.S.C.A. § 405(g). "[Substantial evidence] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Sokoloff v. Richardson, *supra*.

It seems to us to be apparent that the skilled care and the continual observation required by the Patient's condition in this case were more than mere "custodial care" and therefore are not excluded from coverage under the Act, 42 U.S.C.A. § 1395y(a)(9). Consequently, we find that the ALJ's conclusion is not supported by substantial evidence.

We hereby remand the case to the Secretary in accordance with this opinion, so that plaintiff may obtain the necessary certification for full reimbursement for extended care treatment received by his wife while she was confined in the Manhasset Medical Center after July 5, 1971.

So ordered.

---

2. According to the policy of the Social Security Administration, the fact that a patient has little or no chance for recovery does not mean that he does not require a covered level of care. Part A, Intermediary Manual, HIM–13, § 3132.1, CCH Medicare-Medicaid Guide, ¶ 4115.16.