**Charles K. HOWARD and William J. Howard, Executors of the Estate of Laura M. Howard, Plaintiffs,**

v.

**Margaret M. HECKLER, Secretary of the United States Department of Health and Human Services, Defendant.**

**No. CV 84–4397.**

United States District Court, E.D. New York.

Oct. 2, 1985.

William J. Howard, Scarsdale, N.Y., for plaintiffs.

Raymond J. Dearie, U.S. Atty. by Thomas Roberts, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action brought pursuant to sections 205(g) and 1869(b) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g), 1395ff(b), (the Act) to review a final decision of the Secretary of Health and Human Services (the Secretary) denying payment of benefits under the Hospital Insurance portion of the federal program of Health Insurance for the aged and disabled. Plaintiffs seek judicial review of a final order of the Secretary that the claimant, Laura M. Howard, did not require and

receive "skilled nursing care" during her stay at a skilled nursing facility. The parties have cross-moved for a judgment on the pleadings. Fed.R.Civ.P. 12(c). For the reasons stated below, the decision of the Secretary is reversed.

## PROCEDURAL BACKGROUND

Mrs. Laura Howard was hospitalized at North Shore Hospital from April 24, 1982 until May 10, 1982 when she was then transferred to Grace Plaza, Inc., a skilled nursing facility. On May 24, 1982 plaintiffs were notified by the Medicare program's fiscal intermediary that Mrs. Howard's stay at Grace Plaza did not qualify for coverage under the Act. By letter, plaintiffs requested a reconsideration and on November 27, 1982, they were notified that the decision would not be changed. Plaintiffs subsequently requested a hearing before an Administrative Law Judge (ALJ). Record at 63–66.

On March 25, 1983, a hearing was held before an ALJ. At the hearing Mrs. Howard's husband testified and was represented by counsel. After the hearing was concluded the ALJ received a half-page written opinion from Dr. Arthur Bauman, a medical advisor who had been engaged by the ALJ. In this letter Dr. Bauman stated that skilled nursing services were not required. Record at 151. After a *de novo* review of the record, the ALJ concluded that Mrs. Howard received custodial care during her stay at Grace Plaza and therefore, that the services provided were not subject to Medicare reimbursement. Record at 40–44. On December 15, 1983 the Appeals Council remanded the case to the ALJ because Dr. Bauman "furnished little rationale and no clinical findings to support his conclusion," and plaintiffs had no opportunity to cross-examine Dr. Bauman. Record at 24–25. On remand, the ALJ stated that "ample opportunity was provided to the plaintiff's to challenge the medical advisor," and again determined that the claimant had received only custodial care during her stay at Grace Plaza.[1]

Record at 34. The ALJ stated that he had considered the plaintiff's arguments but chose to give greater weight to Dr. Bauman's opinion because of the doctor's "expertise, his familiarity with the applicable regulations, and because he had an adequate opportunity to review the entire record." Record at 34. The ALJ's decision became the final decision when it was affirmed by the Appeals Council on September 6, 1984. Record at 2–3. This lawsuit ensued.

## FACTS

Mrs. Howard was an 82 year old woman who had a mastectomy in 1975 after a diagnosis of breast cancer. She was transferred directly from North Shore Hospital to Grace Plaza on May 10, 1982 on the recommendation of her physician, Dr. Milton Kemp. Mrs. Howard was suffering from breast, skin, and bone cancer, diabetes, an overactive thyroid, and complications emanating from a hip injury. "At the time of her death [on November 5, 1982, Mrs. Howard] weighed about 70 pounds (compared to a normal weight of 120 pounds) and walked only with considerable difficulty." Affidavit of Dr. Kemp, Record at 70. The nature and complexity of her illnesses required extensive medication and close monitoring of her condition. Her diabetes required frequent checks for the presence of blood in her urine and adjustments in her diabetic medication according to her condition. Similarly, her hyperthyroidism required medication and monitoring of her pulse and heart rate. Finally, the substantial metastatis of her cancer required repeated cleaning and treatment of her skin to prevent the spread of infection. Affidavit of Dr. Kemp, Record at 71. Grace Plaza records indicate that Mrs. Howard's lungs required suction on a number of occasions during her stay at Grace Plaza. Record at 69. The testimony of Mrs. Howard's spouse, however, indicated that the use of suction may have been more frequent than shown by hospital records. Testimony of Charles Howard, Record at

1. No additional evidence was taken from Dr. Bauman or any other source.

 

57–58. Although no rehabilitative or restorative goal was set, the nursing home records illustrate that Mrs. Howard was extremely weakened, fragile, accident prone, and occasionally disoriented and confused. Record at 75–120.

## DISCUSSION

 The issue in this case is whether the Secretary's decision that Mrs. Howard received custodial care is supported by substantial evidence. In a prior decision, this Court has extensively surveyed the law on skilled nursing care. *See Kuebler v. Secretary of Health and Human Services,* 579 F.Supp. 1436 (E.D.N.Y.1984), *cited in Roth v. Secretary,* 606 F.Supp. 636 (W.D.N.Y. 1985). Although "custodial care" is defined in neither statute nor regulations, this Court follows two principles in determining whether Mrs. Howard received or required custodial care. First, the court must consider Mrs. Howard's condition as a whole, using a common-sense, non-technical approach. *Roth,* 606 F.Supp. at 639. *See Klofta v. Mathews,* 418 F.Supp. 1139, 1143 (E.D.Wis.1976). Second, the remedial purpose of the Social Security Act requires that it be broadly construed. *Ridgely v. Secretary,* 345 F.Supp. 983, 993 (D.Md. 1972), *aff'd* 475 F.2d 1222 (4th Cir.1973). "[T]he purpose of the custodial care disqualification ... was not to disentitle old, chronically ill and basically helpless, bewildered and confused people ... from the broad remedy which Congress intended to provide for our senior citizens." 345 F.Supp. at 993.

After a thorough examination of the record, this Court concludes that the decision of the Secretary in the present case is not supported by substantial evidence. The extent and severity of Mrs. Howard's symptoms, combined with her advanced age, disorientation, and extreme weakness, demonstrate that she required and received skilled nursing care. Mrs. Howard's multiple illnesses required monitoring and adjustment of her medication according to her varying condition. Occasional suction was required to clear her congested lungs.

Her disorientation and frailty also necessitated that her care could have been provided only by professionals and not by family members or unskilled aides. In addition, her condition required bathing and treatment to prevent the spread of skin infections. Finally, the ALJ's reliance on the report of Dr. Bauman was misplaced. The affidavit of her long-time physician, the testimony of her husband based on personal observation, and the extensive nursing home records more than suffice to negate the bald and unsupported conclusion of the ALJ's consulting physician, Dr. Bauman.

Accordingly, the decision of the Secretary denying Medicare benefits is reversed and it is hereby

ORDERED, that the plaintiffs' motion for summary judgment is granted and defendant's motion for summary judgment is denied, and it is further

ORDERED, that the Clerk of the Court enter judgment for the payment of Medicare benefits on plaintiff's behalf for a period of 100 days beginning May 10, 1982.

SO ORDERED.