Lou A. WALSH, Plaintiff,

v.

**SECRETARY OF the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. CV 84–2938.

United States District Court, E.D. New York.

June 4, 1986.

Robert R. Walsh, Brooklyn, N.Y., for plaintiff.

Reena Raggi, U.S. Atty. by Kevin Simmons, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Lou Ann Walsh brings this action under §§ 205(g) and 1869(b) of the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 405(g) and 1395ff, for review of a determination of the Secretary of Health and Human Services ("Secretary") which denied plaintiff's application for payment of post-hospital extended care services benefits under Title XVIII of the Act ("Medicare"), 42 U.S.C. §§ 1395–1395zz. Specifically, plaintiff seeks reversal of the Secretary's determination that Walsh is not eligible for reimbursement for services rendered at the Hilaire Farm Nursing Home ("Hilaire") for a one hundred day period beginning August 26, 1982. The parties have now cross-moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

### I.

Plaintiff is a 91 year old woman who was born on October 18, 1894. On July 13, 1982, she was admitted to Smithtown General Hospital after she was found unconscious that morning. Dr. Leonard Weitzman diagnosed plaintiff as having atypical pneumonia, dehydration, chronic azotemia, unexplained elevation of CEA, arteriosclerotic heart disease, chronic congestive heart disease, hypertensive cardiovascular disease, postfracture right hip, and nutritional anemia. She was discharged from the hospital July 31, 1982, but was readmitted on August 4, 1982 after she became incontinent, confused, and unable to get out of bed. On August 26, 1982, plaintiff was again discharged from Smithtown General Hospital and was transferred to the Hilaire Farm Nursing Home.

Upon admission to Hilaire, Dr. Gilbert, plaintiff's attending physician at the nursing home, specified a plan of care and directed that Hilaire increase Walsh's ambulation, improve her nutrition, maintain her skin integrity, prevent contractures and avoid falls, improve plaintiff's behavior, and increase her socialization. Dr. Gilbert did not note any medical condition that needed to be stabilized. Dr. Gilbert's progress notes during the course of Walsh's stay at Hilaire indicate that, while plaintiff experienced some "mental confusion at first," she was "pleasant," "cooperative," and "doing very well," and over time became more "mentally alert". On December 14, 1982, Dr. Gilbert indicated that plaintiff "has been quite good mentally" and was to be discharged. Walsh was

discharged from Hilaire on December 18, 1982.

Upon plaintiff's admission to Hilaire, the nursing home informed plaintiff's son that the medical information made available to the nursing home indicated that its services to plaintiff would not be covered by Medicare, but that if plaintiff wished to file a claim, she would receive a formal determination from a Medicare intermediary as to the noncoverage of the stay. On December 17, 1982, The Travelers Insurance Company, the fiscal intermediary, notified plaintiff's son that the care his mother was receiving at Hilaire, although important to her well-being, did not constitute daily skilled services covered under the Medicare program.

Plaintiff then requested a hearing, which was held on September 29, 1983 before an Administrative Law Judge ("ALJ") who considered the case *de novo*. In a decision dated October 14, 1983, the ALJ held that the care Walsh received while in Hilaire was primarily custodial in nature and did not qualify as extended care reimbursable under the Medicare statute. The ALJ's ruling became the final decision of the Secretary when it was approved by the Appeals Council on May 23, 1984. Plaintiff then filed suit in this Court pursuant to 42 U.S.C. §§ 405(g) and 1395ff.

This Court has previously discussed at some length the Medicare program's statutory and regulatory provisions concerning "post-hospital extended care services" and the principles governing administrative and judicial consideration of claims of entitlement to reimbursement under Medicare. *See Gartmann v. Secretary*, 633 F.Supp. 671 (E.D.N.Y.1986); *Kuebler v. Secretary*, 579 F.Supp. 1436 (E.D.N.Y.1984). Briefly, Medicare provides for reimbursement of specific categories of hospital and skilled nursing facility services, including post-hospital extended care services. 42 U.S.C. §§ 1395d(a), 1395x(h), 1395x(i), 1395x(j); 42 C.F.R. §§ 409.30–.36. Any expenses incurred for items or services which are not "reasonable and necessary" for diagnosis or treatment are specifically excluded from coverage under the Act, as are expenses

for "custodial care," which is defined in the regulations promulgated under Title XVIII as "any care which does not meet the definition of extended care." 42 U.S.C. §§ 1395y(a)(1)(A), 1395y(a)(9); 42 C.F.R. §§ 405.310(g). Post-hospital extended care services Medicare benefits are available only where a physician and a "utilization review committee" ("URC") each determine that it is medically necessary that such services be provided daily and that as a practical matter the required services can only be provided in a skilled nursing facility on an inpatient basis. 42 U.S.C. §§ 1395f(a)(2)(C), 1395f(a)(7); 42 C.F.R. § 405.1137. If an individual meets all the statutory and regulatory requirements, Medicare will cover post-hospital extended care services for up to one hundred days during any "spell of illness." 42 U.S.C. §§ 1395d(a)(2)(A), 1395x(a).

■ The proper legal standard for determining the need for reimbursable skilled nursing care involves consideration of the patient's condition as a whole, rather than an analysis of the specific services provided. *E.g., Gartmann*, 633 F.Supp. at 679; *Kellerman v. Heckler*, No. CV 85–3823 (S.D.N.Y. March 11, 1986) [Available on WESTLAW, DCTU database]; *Kuebler*, 579 F.Supp. at 1438; *Klofta v. Matthews*, 418 F.Supp. 1139, 1142–44 (E.D.Wis.1976); *Ridgely v. Secretary of the Dep't of Health, Education and Welfare*, 345 F.Supp. 983, 989 (D.Md.1972), *aff'd*, 475 F.2d 1222 (4th Cir.1973). A common sense, non-technical approach is to be taken in assessing the patient's condition. *Gartmann*, 633 F.Supp. at 679; *Howard v. Heckler*, 618 F.Supp. 1333, 1335 (E.D.N.Y.1985). Furthermore, the remedial purposes of the Act requires that it be broadly construed. *E.g., Gartmann*, 633 F.Supp. at 679; *Coe v. Secretary of Health, Education and Welfare*, 502 F.2d 1337, 1340 (4th Cir.1974); *Howard*, 618 F.Supp. at 1335; *Ridgely*, 345 F.Supp. at 993. Care must be taken "not to disentitle old, chronically ill and basically helpless, bewildered and confused people.... from the broad remedy which Congress intended to provide

our senior citizens." *Ridgely*, 345 F.Supp. at 993.

■ A final determination by the Secretary as to an individual's entitlement to benefits is generally conclusive if supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g) and 1395ff; *Bastien v. Califano*, 572 F.2d 908. 912 (2d Cir.1978); *Gartmann*, 633 F.Supp. at 680. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). A reviewing court, therefore, is compelled to accept the Secretary's supported findings of fact. A court, however, is not bound by the Secretary's conclusions or interpretations of law, or an application of an incorrect legal standard. *E.g.*, *Kuebler*, 579 F.Supp. at 1438; *Sokoloff v. Richardson*, 383 F.Supp. 234, 236 (E.D.N.Y.1973); *Ridgely*, 345 F.Supp. at 988. As one court noted, "Before the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta*, 418 F.Supp. at 1141.

### II.

■ In finding that Walsh was not entitled to reimbursement, the ALJ focused primarily on the nature of the services Hilaire provided plaintiff rather than on plaintiff's condition. The Court, therefore, is not necessarily bound by the ALJ's analysis and conclusions, as they were based upon an improper legal standard. Nonetheless, the Court concludes that even when attention is directed toward Walsh's condition rather than the nursing home's services, the ALJ's ultimate holding is a correct one. In contrast to the condition of patients such as Ms. Kuebler, *see Kuebler*, 579 F.Supp. 1436, and Ms. Gartmann, *see Gartmann*, 633 F.Supp. 671, the record in the instant case does not paint the picture of an individual who could not, as Medicare requires, properly be cared for except through skilled nursing services provided daily in a skilled nursing facility. Neither Dr. Gilbert's notes nor the copious records kept by nurses and other personnel at Hilaire, nor any other documents presented to the Court, indicate that during her stay at the nursing home in 1982 Walsh fell into the category of "chronically ill and basically helpless, bewildered and confused people," *Ridgely*, 345 F.Supp. at 993, for whom Medicare provides benefits. Walsh was, for the most part, alert and able to ambulate with a walker. She could dress and feed herself, was basically continent, and required only minimal assistance with the activities of daily living. An occupational therapy evaluation found that plaintiff was independent in many respects and recommended that occupational therapy was not necessary.

Also noticeably absent in the record is any indication that Drs. Weitzman and Gilbert, plaintiff's attending physicians at the hospital and nursing home, respectively, ever certified that Walsh required post-hospital extended care services as defined by the Medicare statute and regulations. Additionally, while a DMS–1 form apparently prepared by a registered nurse on Hilaire's URC the day before Walsh entered the nursing home indicated that plaintiff was medically qualified for skilled nursing facility care, plaintiff's medical assessment predictor score was stated to be only 141; a score of 180 or greater indicates the need for skilled nursing care. 10 N.Y.C.R.R. § 415.1(a)(2). The record does not contain any subsequent URC continued stay evaluations of Walsh.

■ This Court has previously placed great weight upon the determinations of attending physicians and URCs. *See, e.g.*, *Gartmann*, 633 F.Supp. at 681–82; *Kuebler*, 579 F.Supp. at 1440. The Court held in *Gartmann* that "at least absent a showing by the Secretary that in a given case the statutory system requiring dual certification by an attending physician and a URC has broken down, where both an attending physician and a URC certify that an individual requires post-hospital extended care services, these determinations shall be binding

upon the Secretary." *Gartmann,* 633 F.Supp. at 681–82. The logic of such deference to the independent and informed medical judgment of health care professionals is equally forceful when a medical determination is detrimental to the pocketbook of an individual patient and her family as when a medical assessment is of benefit to a particular individual's financial situation. Congress has placed into the hands of physicians and URCs the role of weighing the medical needs of specific patients against the need to curtail unnecessary medical costs. It is not for the laypersons who administratively and judicially monitor the decisions of health care providers to exercise their power so as to overrule apparently agreed upon determinations as to the necessity of given kinds of medical and physical care. Thus, the Secretary and the federal courts should ordinarily defer to the decision of physicians and URCs *not* to certify that skilled nursing care is medically necessary to no lesser extent than is required where doctors and URCs *do* indicate a need for such care.

### III.

 One final issue need be addressed. 42 U.S.C. § 1395pp provides that where a determination is made that services provided are not covered by Medicare, the Secretary will nonetheless authorize payment where an individual or health care provider or other such person did not know or could not reasonably be expected to know that the cost of the services was not reimbursable. Furthermore, 42 C.F.R. § 405.332 establishes criteria for determining if there is knowledge that certain items or services were excluded from coverage. Under § 405.332, an individual to whom items or services declared to be non-covered "custodial care" or "not reasonable and necessary" are furnished is deemed to have the requisite knowledge only if "he, or someone acting on his behalf, had been given written notice stating that the items or services were excluded from coverage." 42 C.F.R. § 405.332(a).

On August 26, 1982, prior to the provision of any services to plaintiff by Hilaire, plaintiff's son was given written notification that the care to be provided his mother was not covered by Medicare. Plaintiff's son, with full knowledge of the determination of non-coverage, decided that Walsh should enter the nursing home. Although notification might more properly have been supplied earlier than just immediately before plaintiff was scheduled to be admitted to Hilaire, the Court must uphold as justified the Secretary's determination that § 1395pp does not apply to the instant case.

### IV.

For the reasons set forth above, defendant's motion for judgment on the pleadings is granted and plaintiff's motion is denied. The Clerk of the Court is hereby directed to enter judgment for defendant, affirming the Secretary's determination.

SO ORDERED.