Lydia GONZALEZ, Plaintiff,

v.

**SECRETARY OF the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. CV 84–4173.

United States District Court,
E.D. New York.

Oct. 3, 1986.

Robert & Schneider, Hempstead, N.Y., for plaintiff.

Andrew J. Maloney, U.S. Atty. by Patricia Galvin, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

*MEMORANDUM AND ORDER*

WEXLER, District Judge.

Plaintiff Lydia Gonzalez brings this action under §§ 205(g) and 1869(b) of the Social Security Act ("Act") as amended, 42 U.S.C. §§ 405(g) and 1395ff(b), for review of a determination of the Secretary of the United States Department of Health and Human Services ("Secretary") denying plaintiff's application for reimbursement under the Medicare program, 42 U.S.C. §§ 1395–1395zz, of the costs of plaintiff's care during a period of time she remained in a hospital awaiting discharge. The parties have now moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

I.

On April 28, 1981, plaintiff, who was then seventy two years old, was admitted to the Nassau Hospital in Mineola, New York complaining of a painful draining sore on her lower back. On April 29, 1981, a Dr. DiGregorio performed surgery upon plaintiff consisting of depridement of a large chronic sacral decubitus ulcer with sacral ostectomy and rotation of a large sacral rotation flap. A portion of the flap became infected, however, and, on June 18, 1981, Gonzalez underwent additional surgery, performed this time by a Dr. Villar. This second operation involved depridement of a small residual of material and a split thickness skin graft.

On July 27, 1981, the Nassau Hospital Utilization Review Committee ("URC"), acting pursuant to the requirements of federal and state law and on behalf of the Nassau Physicians Review Organization ("Nassau PSRO"), notified Gonzalez that, after review of her medical needs and consultation with Dr. DiGregorio, the URC had determined that she was no longer eligible for Medicare benefits. Specifically, the URC concluded that Gonzalez required only "custodial care," a level of care not covered under the Medicare program. Accordingly, the URC informed plaintiff that her Medicare benefits would cease at midnight of July 28, 1981.

Gonzalez remained in the hospital until August 20, 1981. Her discharge was delayed because of "disposition problems," namely, her apartment was in an insanitary condition, apparently because plaintiff's granddaughter had failed to maintain it and had allowed a dog to live in it without cleaning up after the animal. It is for the period between July 28 and August 19, 1981 that plaintiff seeks benefits.

On August 19, 1981, just prior to Gonzalez's leaving the hospital, the Nassau PSRO affirmed upon reconsideration the URC's decision to terminate plaintiff's Medicare benefits. Plaintiff then appealed to the New York Statewide Professional Standard Review Council ("Review Council"). The Review Council requested that the Nassau PSRO send it the medical record and all appropriate documentation relating to Gonzalez's stay at Nassau Hospital, including "1. Reasons for the PSRO determination beyond merely a statement regarding level of care, coverage policies, etc. The Appeals Committee is interested in knowing how the PSRO reached its decision. 2. Review coordinator/physician advisor worksheet. 3. A legible medical record." The PSRO complied with the Review Council's request by providing it with the complete medical record. On May 20, 1982, Dr. Anthony J. Altieri of the Review Council determined that plaintiff's appeal should be denied. Dr. Altieri stated, "By 7/27 patient was stable[,] sacral wound was healing well, patient was ambulatory and awaits [sic] home care. Patient did not require acute or skilled nursing care as defined by Medicare." On December 8, 1982, the Review Council notified plaintiff that her appeal had been denied.

Plaintiff then requested a *de novo* hearing in front of an Administrative Law Judge ("ALJ"). Such a hearing was conducted on June 21, 1983 by ALJ Robert H. Strauss at which time testimony was taken from Gloria Yakre, a social worker assistant employed by Nassau Hospital who works primarily in discharge planning, and Dr. Nathaniel E. Reich, a specialist in cardiology and internal medicine and a medical advisor to the Social Security Administra-

tion. Neither witness actually worked with or treated Gonzalez while she was in Nassau Hospital or was otherwise directly involved with her stay in the hospital. In a decision dated August 30, 1983, the ALJ held that:

> The substantial evidence demonstrates that from July 29, 1981 to August 19, 1981, inclusive, the claimant did not medically require inpatient hospital services or the services of skilled nursing professionals. She was duly notified on July 27, 1981 that hospital services were no longer required and that payment would not be made after July 28, 1981. Accordingly, payment cannot be made on the claimant's behalf under Title XVIII of the Social Security Act, as amended, for hospital services rendered from July 29, 1981 through August 19, 1981.

The ALJ's decision became the final determination of the Secretary when the Appeals Council affirmed the ALJ's holding on November 30, 1983.

## II.

This Court has recently had occasion to discuss in some depth, in the context of the availability of post-hospital extended care benefits, the Medicare program and the principles that should control administrative and judicial consideration of claims of entitlement to coverage under Medicare of health care costs. *Walsh v. Secretary*, 636 F.Supp. 358 (E.D.N.Y.1986); *Gartmann v. Secretary*, 633 F.Supp. 671 (E.D.N.Y.1986); *see also Gitto v. Secretary*, 637 F.Supp. 194 (E.D.N.Y.1986); *Kuebler v. Secretary*, 579 F.Supp. 1436 (E.D.N.Y.1984). There is no need, therefore, for the Court to set forth once again many of the statutory and regulatory provisions, and the judicial glosses of these provisions, that must govern suits brought to obtain Medicare benefits.

This case, however, presents a slightly different situation from those which the Court has previously faced and thus does warrant some additional discussion of the applicable law. Unlike the plaintiffs in

cases such as *Walsh, Gartmann, Gitto,* and *Kuebler,* Gonzalez seeks not post-hospitalization benefits, but reimbursement for the costs of the care provided while she was awaiting discharge from the hospital. Plaintiff argues that she received "skilled care" during the period relevant to this lawsuit and therefore is entitled to the Medicare reimbursement she seeks.

Plaintiff is undeniably correct, and the Secretary does not dispute, that a patient may be eligible for Medicare payments for skilled nursing care even though the care is delivered in a hospital rather than a skilled nursing facility, at least under certain circumstances. *See* 42 U.S.C. § 1395x(v)(1)(G)(i); 42 C.F.R. 405.1627(b); *Hultzman v. Weinberger,* 495 F.2d 1276 (3d Cir.Circuit 1974); *Hayner v. Weinberger,* 382 F.Supp. 762 (E.D.N.Y.1974). As the Court observed in *Hayner,* "It would be anomalous to say that Congress intended to leave a gap in coverage for a patient who is lying on her back in a general hospital and who, through no fault of her own, could not immediately obtain extended care treatment elsewhere and at the same time provide such coverage if she could have obtained such treatment in another facility." 382 F.Supp. at 765. By the same token, however, it would be equally anomalous to require reimbursement for custodial care provided in a hospital when such care would be excluded from coverage if provided elsewhere. *See* 42 U.S.C. § 1395x(v)(1)(G); *Monmouth Medical Center v. Harris,* 646 F.2d 74 (3d Cir. 1981); *Hayner,* 382 F.Supp. 762. As the Third Circuit stressed in *Monmouth Medical Center,* 646 F.2d at 80, it is the level of care given to patients that is determinative of Medicare coverage, not the place in which the care is administered.

Plaintiff's claim, therefore, must stand or fall depending upon the classification of the care that Gonzalez received from July 28, 1981 until her ultimate discharge from Nassau Hospital. Assuming that the Secretary has applied the correct legal standards, the Court must accept his final determination that plaintiff received non-reimbursable "custodial care" so long as this conclusion is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g), 1395ff; *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978); *Gartmann,* 633 F.Supp. at 680. If the Secretary has employed an improper standard of law by, for instance, focusing on the specific services provided rather than on plaintiff's condition as a whole, his final determination is *not* binding on the Court, the "substantial evidence test" does not even come into play, and the Court may make its own independent determination of the need for reimbursable skilled nursing care and the proper classification of the care that was, or should have been, provided. *See Walsh,* 636 F.Supp. at 360–61; *Gartmann,* 633 F.Supp. at 679–80.

The ALJ's decision is not crystal clear as to the ultimate basis for its holding and it is therefore difficult for the Court to determine if the proper legal standards were applied. The opinion, for example, does discuss plaintiff's physical condition, but fails to indicate the relative weightiness of her condition as opposed to specific nursing services and other treatment in leading the ALJ to his denial of Gonzalez's claim. In any event, whether or not the Secretary's final decision is deemed binding, the Court is of the opinion that the denial of benefits must be affirmed. The voluminous medical records demonstrate that, during the relevant period, Gonzalez's condition was essentially stable and she was unable to return to her home not due to *her* physical condition, but to that of her home environment. Furthermore, Dr. DiGregorio, a treating physician, and the URC concluded that Medicare did not cover the level of care plaintiff required, decisions that were affirmed on multiple occasions and which must be given nearly complete deference by the Court. *Walsh,* 636 F.Supp. at 361–62; *Gartmann,* 633 F.Supp. at 681–82. It is unfortunate that the insanitary condition of plaintiff's apartment, which seemingly stemmed from her own family's neglect and was almost unquestionably avoidable, resulted in a medically unnecessary lengthening of plaintiff's hos-

pital stay and concomitant increased health care costs.  This situation, however, is insufficient to justify the Court's expansion of the relatively clearly demarcated limits of the Medicare program's coverage.

## III.

For the reasons set forth above, the Court hereby grants defendant's motion for judgment on the pleadings and denies plaintiff's similar motion.  The Clerk of the Court is directed to enter judgment for defendant affirming the Secretary's determination.

SO ORDERED.